CAMERON, ADMINISTRATRIX, APPELLANT *v.* KENYON–
CONNELL COMMERCIAL CO. ET AL., RESPONDENTS.

[No. 1,018.]

[Submitted January 23, 1899.  Decided March 20, 1899.]

*Corporations — Nuisance—Liability of Directors — Trial—
Nonsuit.*

1. On motion for a nonsuit, everything which the evidence tends to prove must be taken as true.
2. The fact that powder stored in defendants' warehouse did not exceed the quantity allowed by a city ordinance does not relieve them from liability for death from an explosion, if the amount kept by defendants was in excess of that authorized by a state statute.
3. The directors of a corporation are personally liable for the death of one killed by the explosion of powder unlawfully kept in the corporation's warehouse, though they had no knowledge thereof, if, by exercising ordinary diligence as directors, they could have known that the warehouse contained an unlawful amount.
4. In an action to recover of directors for the death of one killed by the explosion of an unlawful amount of powder kept in the corporation's warehouse, the burden is on the directors to show that by the exercise of ordinary diligence in the management of the business they could not have discovered that powder was stored in unlawful quantities.

*Appeal from District Court, Silver Bow County; J. J.
McHatton, Judge.*

ACTION by Minnie Cameron, as administratrix of Angus D. Cameron, deceased, against Kenyon-Connell Commercial Company, a corporation, and M. J. Connell, W. R. Kenyon, J. E. Gaylord, C. H. Palmer and W. A. Clark.   Motion for nonsuit as to defendants Kenyon, Connell, Palmer and Gaylord was granted.   From an order denying a new trial as to such defendants, plaintiff appeals.   Reversed.

*T. J. Walsh* and *J. W. Kinsley*, for Appellant.

*Wm. H. De Witt* and *John F. Forbis*, for Respondents.

In all civil cases we shall find that the officer or agent of a corporation becomes liable with the corporation primarily to

third parties, whenever by malfeasance or by misfeasance he has contributed to the injury to such third person. On the contrary he is never liable to third persons for acts of non-feasance, but may be held liable therefor to his principal, the corporation. Nor can this be held to be a refined distinction. It is the difference between doing and not doing; the difference between acting and not acting; the difference between perpetrating a wrong and doing nothing. He may be held by third parties for doing that which ought not to have done, but he cannot be held for a mere omission. For omissions his principal only may hold him responsible. The distinction must be here observed between one acting for himself as principal and as agent for another. Had respondents been the principal as the defendant corporation was, the law would not permit them to plead that they took no part in the transaction or were ignorant of what occurred. The act of the agent is the act of the principal. But when they show that they are simply agents with others of a common master then the defense becomes effectual. (Thompson on Corporations, Sections 4091, 4096, 4097, 6289; *Fanning* v. *D. M. Osborne & Co.*, 102 N. Y. 441; *Hewitt* v. *Swift*, 3 Allen 420; *Nunnelly* v. *Southern Iron Co.*, 28 L. R. A. 421 and notes; Beach on Private Corporations, 253-4-5, 262; *Bath* v. *Caton*, 37 Mich. 199; *Harriman* v. *Stowe*, 63 Mo. 93; *Carey* v. *Rochereau* 16 Fed. 87; *Henshaw* v. *Noble* 7 Ohio St. 232; *Labodie* v. *Hawley*, 61 Tex. 177 (48 Am. Rep. 278); *Phelps* v. *Wait*, 30 N. Y. 78; *Peck* v. *Cooper*, 112 Ill. 192, (54 Am. Rep. 231 and notes); *Lane* v. *Colton* 12 Mod. 488). To say that officers are chargeable with knowledge of what its agents do, is to charge them with liability for all acts of the agents. If this is the rule a great deal of time has been wasted by the courts in discussing the question as we have shown by the authorities cited. All of this should have been obviated by charging the officer with knowledge, and then we should not have this discussion of nonfeasance and misfeasance, because it is admitted that the officers are liable if the powder was unlawfully stored with their knowledge.

That there is no presumption of knowledge on the officers' part. (*Rudd* v. *Robinson*, 126 N. Y. 113 (12 L. R. A. 473; *Fisher* v. *Graves*, 80 Fed. 590.)

**HUNT, J.**    Plaintiff, as administratrix of the estate of Angus D. Cameron, deceased, brought this action against the Kenyon-Connell Commercial Company, a corporation, and M. J. Connell, W. R. Kenyon, J. E. Gaylord, C. H. Palmer and W. A. Clark, trustees and agents of the corporation, for damages by reason of the killing of Angus D. Cameron, on January 15, 1895, through force of an explosion of giant powder negligently and unlawfully kept by defendant corporation in its warehouse within the limits of the city of Butte.

The corporation denied the negligence and unlawful acts averred.    Kenyon, Connell and Palmer each separately answered, and denied any unlawful or negligent act on his part, and each affirmatively pleaded that the warehouse was the property of the corporation, and that he never authorized or directed any powder to be stored therein, and was ignorant of the fact that any powder was stored therein.    Gaylord and Clark each denied the allegations of the complaint, or that he was a managing agent or trustee or officer of the corporation.

Trial to jury.    Motion for nonsuit by individual defendants was granted.    Thereafter plaintiff's motion for a new trial as to defendants Kenyon, Connell, Palmer and Gaylord was overruled.    Plaintiff appeals.

The record discloses these facts:    The defendant corporation dealt in hardware, merchandise and powder.    It owned a large frame, iron-roofed warehouse, near a railroad depot within the corporate limits of the city of Butte, where it kept its merchandise, including Hercules powder, a dangerous explosive compound of nitroglycerine and other substances. On the night of January 15, 1895, the warehouse took fire. Plaintiff's intestate, Cameron, was the chief of the fire department of the city of Butte, and commanded the firemen who responded to the alarm.    While the firemen were actually engaged in an endeavor to put the fire out, a fearful explo-

sion occurred within the corporation's warehouse, and many persons, including Cameron, were killed.

From the beginning of the year 1893, Hercules and giant powder had been kept in the warehouse. Defendants Kenyon and Connell had both been seen in or about the building during 1893, and at divers times up to the time of the explosion, —Kenyon often, Connell very seldom, the other defendants never. The quantity of powder kept in the warehouse about the 1st of each month was from 20 to 50 boxes, larger quantities being stored in a powder magazine three miles out of the city. On the day before the explosion a witness saw some 7 boxes of powder, 50 pounds in each box, in the warehouse. An employe, one Orcutt, had immediate charge of the warehouse, and ordered the powder put where it was. He said that on the day of the explosion he thought there was somewhere about three to five cases of powder in the warehouse; while another witness, a mining superintendent accustomed to using powder, said he thought a ton must have exploded on the night of the fire.

Defendant Connell was president of the corporation; Kenyon was general manager. Kenyon's duties were to give attention to the corporation's business, his particular duties being to look after the financial part, and ordering goods, but not to manage or control the warehouse or magazine, which were under the warehouseman Orcutt's direct charge. Neither Connell, the president, nor any of the other trustees, except Kenyon, had anything whatever to do with the actual personal management of the affairs of the corporation.

It is plain that this corporation, like many others in the commercial world, had one head—director—to whom all the other trustees gave the entire practical management of the concern.

It thus furnishes but a single instance of the common practice among business men to incorporate commercial enterprises and, in doing so, of their trusting the entire actual management to the one director who is familiar with, and assumes the real control of, the particular business undertaken.

This custom has doubtless been the outgrowth of a belief, generally correct too, that, by incorporating mercantile or other undertakings, directors are not liable to creditors in case of business reverses, while those who associate themselves as members of a partnership are.

But, notwithstanding all this, there are various unavoidable responsibilities that attach themselves inseparably to the office of corporate directorship, which, in case of negligence or misconduct, often illustrate the risks incidental to accepting such positions of trust in a corporation and of not prudently guarding against their possible consequences.

It is a general rule that the ordinary business of a corporation is managed in the name and on behalf of the corporation by particular agents, chosen by the stockholders. These agents are the directors. For their acts, performed within the apparent scope of their authority, the corporation is responsible, while, *e converso*, the corporation can act through these agents alone.

These principles are generally familiar to business men, as well as to lawyers. They control the relation of the artificial being, the corporation, to the world at large. They find their foundation in the law of agency, which makes the corporation the principal; still, they are extended, under certain conditions, far enough to inculpate the agents or directors of the corporation, notwithstanding the fact that the principal may also be liable for a wrong done.

Now, bearing in mind that this case presents itself upon a motion for a nonsuit and that we must accordingly consider as true everything which the evidence tended to prove on the trial, we have before us a corporation guilty of a nuisance, by having kept in a frame warehouse within the limits of an incorporated city, in the vicinity of railroad depots and other buildings, an amount of Hercules powder in excess of the quantity—50 pounds—allowed to be stored therein by the laws of the State. (Laws Mont. Ex. Sess. 1887, p. 68; Comp. St. 1887, First Division, Sec. 361; *Cheatham* v. *Shearon*, 1 Swan. (Tenn.) 213). It is very hard to conceive of anything

more terrible in its danger to life and property than a quantity of highly-explosive powder kept near to where people live or do business.  Such a menace, when known, obstructs that free use of property which the law assures to an owner; while nothing could more seriously interfere with the comfortable enjoyment of life than the knowledge that in one's neighborhood there is a frame building in which nitroglycerine explosives are stored in large quantities.  No ordinance of a city could authorize a larger quantity of powder to be kept by a corporation within the city limits than the state statute allows, unless some special exception is to be found exempting the inhabitants of such city from the operation of the general statute.  None such affecting Butte is known to us, however; so we must regard the ordinance of that city, pleaded by defendants, which permits 150 pounds of powder to be kept at one time by a company in its warehouse within the limits of that city, as inconsistent with the State law, without force, and immaterial to the case before us.

The corporation, therefore, by maintaining this nuisance, became the subject of indictment for misdemeanor (Whart. Cr. Law, Sec. 91), as well as liable in civil action for injury to person or property caused by the nuisance (*Heeg* v. *Licht*, 80 N. Y. 579).

These propositions are too plain for extended comment. They demonstrate a liability to this plaintiff—assuming always the evidence is uncontradicted.  Hence we pass to the more direct inquiry whether the directors of the guilty corporation are also liable for Cameron's death.

As said before, the trustees manage the stock, property and concerns of a corporation (Comp. St. Fifth Div., Sec: 450); wherefore it is difficult to see how all responsibility in this management can be avoided as long as the trustees hold their offices.  Certainly, the ministerial work of a corporation may be delegated to subordinate agents, and often must be.  The details of a corporation's business necessitates this; and if directors act in good faith, and with reasonable care and diligence in appointing and supervising such inferior

agents, they are not personally responsible for damages occasioned by the agents' negligence, or even crimes. (Thomp. Corp., Sec. 4107). But a director cannot wholly escape his duty of supervision or transfer his authority to represent his principal, at least without the principal's consent; otherwise he could evade every responsibility imposed by law upon him by simply absenting himself from meetings, or by avoiding information of the acts of the other directors in expressing the will of the corporation, or by delegating an employe to act as trustee for him. Morawetz on Private Corporations, in Section 536, says: "The general supervision and direction of the affairs of a corporation are especially intrusted by the shareholders to the board of directors; it is upon the personal care and attention of the directors that the shareholders depend for the success of their enterprise. It follows that authority to delegate these general powers of management cannot be implied. Thus, the directors of a company have no implied authority to enter into a contract with a creditor by which the entire management of the company's affairs is placed in his control until the debt has been paid.

Third persons may hold directors liable in positive tort, upon the principle that a positive wrong done by a servant or ordinary agent must be applied to the misfeasance of directors also. (*Salmon* v. *Richardson*, 30 Conn. 360, 79 Am. Dec. 255.)

Persons having in their custody gunpowder or other instruments of danger should keep them with the utmost care. "The risk incident to dealing with fire, firearms, explosive or highly inflammable matters, corrosive or otherwise dangerous or noxious fluids, * * * is accounted by the common law among those which subject the actor to strict responsibility. Sometimes the term 'consummate care' is used to describe the amount of caution required; but it is doubtful whether even this be strong enough. At least, we do not know of any English case of this kind (not falling under some recognized head of exception) where unsuccessful diligence on the defendant's part was held to exonerate him." (Webb's Pollock on Torts, p. 615.)

A company charged with an obligation of this nature cannot devolve it upon another in a manner so as to exonerate the company from a liability for an injury caused to a third person by the negligent way in which the duty pertaining to the care of giant powder or other dangerous explosives may be executed.    In torts, the relation of principal and agent cannot relieve the wrongdoer.    (*Berghoff* v. *McDonald*, 87 Ind. 559.)

It is unnecessary to consider the rule which relieves the master from liability for his servant's acts, where the servant does something outside of his employment,—for that is not involved.

But the case does present facts to which this principle fits: that whatever the servant is intrusted by the master to do for him must be performed with a like degree of care which the law holds the master to were he acting for himself.

We apply this principle for the reason that there is a presumption that the trustees of a trading corporation know of the principal articles in which the company deals, and whether or not such articles are highly dangerous to life and property.

It is therefore the duty of the trustees of a corporation dealing in explosives to exercise such reasonable supervision over the management of their company's business as will result in the observance of the utmost care on the part of the subordinates who direct or handle the explosives.    This rule grows out of "the great principle of social duty that every man, in the management of his own affairs, whether by himself or by his agents or servants, shall so conduct them as not to injure another; and if he does not, and another thereby sustains damage, he shall answer for it." (*Farwell* v. *B. & W. Railroad Co.*, 4 Metc. (Mass.) 49.)    It is likewise their duty to avoid the creation of nuisances by their corporation, through its employes acting within the line of their duties.

Nor will inaction by itself overthrow the force of this obligation upon trustees to so control their corporation's business as to not negligently injure third persons.    Along with the assumption of the duties of trusteeship go the duties of exercising reasonable care in the manner of performing those du-

ties. This reasonable care appears not to have been exercised in this case, where the corporation, by its trustees, permitted a public nuisance to be created, and to continue, whereby, as a consequence of the act of permitting it, a third person, not in fault, has been killed.

Because directors are themselves agents, it is none the less true that they owe a common-law duty to third persons. If they violate that duty, they are responsible, whether the violation is the result of a wrongful omission or commission. (Mechem on Agency, Sec. 572.) Were the rule such that wrongful commission alone meant liability, as before indicated, directors' statutory duties to manage would be sufficiently performed by absence; and, the denser the ignorance on a director's part of the business of his concern, the more certain his exoneration from liability for the tortious acts of the company's employes. Such a rule would be unhealthy and unsound.

The liability of a director in tort is not to be avoided by his "vicarious character," where the tort of the corporation has been committed through the directors. (*Nunnelly* v. *So. Iron Co.* (Tenn. Sup.) 28 Lawy. Rep. Ann. 421. s. c. 29, S. W. 361; *Bank* v. *Byers*, 139 Mo. 627, 41 S. W. 325; *Delaney* v. *Rochereau*, 34 La. Ann. 1123.)

Relationship of contract to a corporation neither adds to nor subtracts from a man's duty to strangers to so use his own property, or that under his control, as not to injure another. (*Baird* v. *Shipman* (Ill. Sup.) 7 L. R. A. 128, 23 N. E. 384; Riche's note to *Nunnelly* v. *So. Iron Co.*, *supra;* *Jenne* v. *Sutton*, 43 N. J. Law, 257; *Mayer* v. *Thompson-Hutchinson Building Co.* (Ala.) 28 L. R. A. 433, 16 South. 620.

Eminent judges have drawn distinctions between a trustee's liability for misfeasance, malfeasance, and nonfeasance. (*Bell* v. *Josselyn*, 3 Gray, 309.) But they are of no vital importance on this appeal. Nevertheless, reasoning upon these distinctions, defendants have argued that they are liable, if at all, to the corporation only, inasmuch as the record shows nonfeasance merely, or nonexecution of the duties of their

directorships.    This argument seems to overlook the proposition that directors are charged with the affirmative duty of knowing something of the management of their company's business, and of exercising reasonable supervision of its management.

Management usually signifies positive, rather than negative, conduct.

As a matter of defense, it is proper to show all facts by which the jury can say whether the inaction or ignorance relied on is a sufficient excuse for the wrong done.   But we have no hesitation in saying that, upon a state of facts like that before us, nonexecution which resulted in the positive act of a creation and maintenance of a continuing nuisance on account of which a third person was killed amounts, unless explained, to misfeasance upon the part of all the directors of the company, except as to Kenyon, who, it appears *prima facie,* must have actually known of and authorized the nuisance.    As to him it was malfeasance.

A director who knew nothing of the nuisance, and who could not, by exercising ordinary diligence in control, have known of it, or, generally speaking, one who, considering the situation and all the attendant circumstances, has performed his duty of taking care, is not liable, and cannot be held so. In this case the defense must show this though, for a *prima facie* case is made by plaintiff.

Due care involves several elements relative to the circumstances of the case.    Ordinary care, for instance, on the part of a corporation that deals in hardware would not prevent the storage of large quantities of nails in a frame warehouse in the middle of a city.   The dangers from doing so would be slight, even in case of fire or lightning; but such a practice with giant powder or nitroglycerine would be negligence, fraught with imminent peril to life and property.    We said, in considering the law of negligence in a boiler explosion case (*Johnson* v. *B. & M. Mining Co.,* 16 Mont. 175, 40 Pac. 301):

"Familiar underlying principles, evolved from generations of experience and thought, are to be applied to the peculiar

phases presented by the facts and circumstances of the particular case under investigation.    And so we find the opinions, in discussing the definition of 'ordinary care,' recognize that no fixed arbitrary rule can be laid down, but that the degree of care and vigilance required varies according to the exigencies which require attention and vigilance, conforming in amount and degree to the particular circumstances under which they are to be exercised.''

In *Railway Co.* v. *Ives*, 144 U. S. 408, 12 Sup. Ct. 679, the Court, in very clear language, said:

''There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances.    The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined.    What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court.    It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.''

After all, therefore, the question of the personal liability of the officers of this corporation for the negligence which resulted in Cameron's death, resolves itself into whether or not they exercised reasonable diligence in the control and supervision in their management of the corporation's business, or whether they were negligent in doing or not doing so under all the circumstances of the case.

The case must be reversed and remanded for a new trial. It is so ordered.

*Reversed and remanded.*

BRANTLY, C. J., and PIGOTT, J., concur.