Eugene F. Beardsley v. The Murray Iron Works Co., Appellant.

129  675
144  647

**Master and Servant:** NEGLIGENCE OF MASTER: EVIDENCE. In , an action for injuries to a servant received in rolling an iron wheel from one shop to another, the evidence is reviewed and held insufficient to show negligence of the employer in failing to furnish a safe place to work, or in failing to furnish necessary help.

**Same:** INABILITY OF FELLOW WORKMAN. Evidence reviewed and held insufficient to show that the physical inability of a fellow workman, assisting in moving an iron wheel, contributed to plaintiff's injury.

**Contributory negligence:** EVIDENCE. A master is not liable for injuries to a servant caused by the negligence of the servant. Evidence held to show negligence of the servant.

**Negligence:** FAILURE TO INSTRUCT A SERVANT. It is the duty of the master to instruct an inexperienced employé in the performance of a service attended with a danger of injury which is not known to or appreciated by the employé. Evidence held sufficient to take the case to the jury on the question of· the employer's duty to instruct the servant with respect to moving a large iron wheel.

**Instruction:** NEGLIGENCE OF FELLOW WORKMAN. In an action for injury to a servant occasioned in moving a large iron wheel in conjunction with a fellow workman, an instruction that plaintiff could not recover if the accident was the result of his own negligence, was not erroneous in failing to include the negligence of his ·co-employé.

**Instruction:** EXERCISE OF CARE. An instruction that "if at the very time of the injury" plaintiff failed to exercise ordinary care, he could not recover, was not erroneous.

*Appeal from Des Moines District Court.*— HON. W. S. WITHROW, Judge.

˙ Thursday, February 15, 1906.

Action for damages resulted in a judgment against the defendant, from which it appeals.— *Affirmed.*

*Seerley & Clark, George S. Tracy,* and *S. K. Tracy,* for appellant.

*E. L. Hirsch,* for appellee.

LADD, J.— The defendant's machine shops are located at the corner of Central avenue, extending east and west, and Washington street, in the city of Burlington. A short distance north of the corner the right of way of the Chicago, Burlington & Quincy Railroad Company passes through its property. The part of the plant north of the road is called the " Corliss shop " and that south of it the " old shop." The plaintiff had been employed in the old shop for about two months as helper to the machinists and to do whatever the foreman might direct. On the 8th day of September, 1903, he was instructed by said foreman to go to the Corliss shop and roll a fly wheel over to the old shop. One Schultz was sent to assist him. This wheel was five feet in diameter, with rim twelve and one-half inches wide, and weighed 1,185 pounds. The rim was crowned; that is, the center was one-sixteenth of an inch higher than the edges, so made the better to hold the belt in place. This had the effect, when the wheel was resting on the rim, to incline it to one side nine-sixteenths of an inch. Neither of these men had ever had any experience in moving such a wheel. They rolled it out of the door of the Corliss shop safely on the sidewalk of Central avenue. There they swung it to the south. Both had their shoulders against the rim, pushing as well as steadying, when it got out of balance and fell on plaintiff's legs, breaking both of them below the knees.

The petition charges the defendant with negligence, stating five different grounds: (1) Failure to furnish safe means to do the work; (2) requiring it to be done by an insufficient number of men; (3) furnishing an assistant incompetent for the purpose; (4) leaving scraps of iron on the sidewalk, and thereby rendering it a dangerous place to work:

and (5) omitting to warn plaintiff of the danger and to instruct him how to perform the task.    All of these were submitted to the jury.    The defendant insists that the evidence was not sufficient to sustain any of them.    This contention is correct as to all save the last.    We shall take them up in the order stated.

The evidence was to the effect that in wet weather such wheels were hauled from one shop to the other on trucks. But the sidewalk was dry and the sun shining on the day of the accident, and the evidence showing that two men could safely roll wheels from one shop to the other in dry weather was undisputed. More were required to remove larger wheels, but not those of the size of that in controversy.    Even if more than two had been seen by one witness engaged in rolling such a wheel, this of itself was not evidence that a less number could not have done so safely.    Nor did the statement of a witness that such wheels were generally moved on truck put in issue the testimony of three witnesses that this might be safely done in another way, namely, by rolling.    This method had been followed for many years, and the evidence failed to show that it was not a safe and practicable method of performing the work.    This disposes of the first two grounds.

1. MASTER AND
SERVANT:
negligence:
evidence.

The evidence tended to show that Schultz, who assisted plaintiff, had recovered from typhoid fever about five months previous to the accident, and, though able to sweep and to shovel coal, had not fully regained his strength. The jury might have found that this was known to defendant's foreman, but unknown to plaintiff.    Even though all this be resolved against defendant, however, there is not a particle of evidence from which it might have been inferred that this contributed to the fall of the wheel.    It was moved about twenty feet in the Corliss shop to the door on Central avenue, where there was an incline up to the sidewalk about four feet long and twelve

2. SAME: inability
of fellow
workman.

or fourteen inches above the level at the highest point. They rolled it back a little and then forward, thereby acquiring sufficient momentum, with their efforts, to roll it on the sidewalk. This walk was of brick and had become somewhat uneven, which, as Schultz testified, made the wheel topple. He was on the inside — that is, next to the building — and pushing with shoulder against the rim of the wheel and steadying it as best he could.

Schultz testified: " After we got started toward the south with the wheel it got overbalanced. We. tried to steady it, and Mr. Beardsley tried steadying it, and it fell across his feet. . . . I had hold of the wheel, and it did not fall on my side, but fell on plaintiff's side of the wheel, and he had hold of the side of the wheel that fell on him, and when he fell he had hold of the wheel and kind of drawed it over on him." The plaintiff testified: " When we got out on the sidewalk we swerved the wheel to the south. I put my shoulder against the rim of it at the back of the wheel. I faced toward the building. I had the spoke that was pointing down. I had hold of the spoke and raised it gradually. I got a little west and noticed by my shoulder that the wheel was wobbling, and I got up around to see, and the east side was wobbling and I tried to steady it, and when I got there the wheel was falling. I made an effort to get away. I seen it was too heavy, that I couldn't do anything with it, and I stepped away from it. I stepped on something that seemed round to me, and my foot slipped out from under me. I still tried to get away after that. I did not get away, and the wheel fell." Certainly it cannot be inferred from this evidence that the fall of the wheel can be attributed to any lack of strength on the part of Schultz.

Doubtless the existence of iron scraps and shavings on the sidewalk contributed to plaintiff's injuries, as both he **3. CONTRIBUTORY** and Schultz testified that the former's foot **NEGLIGENCE. evidence.** slipped on something when he fell. But if these were on the walk it was quite as much the fault of

plaintiff as of the company.   It appeared that boxes were set at the edge of the sidewalk, and into these iron scraps, shavings, and filings were carried from the shops and dumped and afterwards hauled away.   It was a part of the duty of plaintiff as well as Schultz to so place the material and to keep the sidewalk clean.   The foreman so testified, and plaintiff said:

I had often seen this walk before I got hurt.   I had seen these rags and cinders on the sidewalk before I got hurt several times.   I would sometimes take them up.   It was part of my duty to clean off this sidewalk, and I always did it whenever there would be any considerable accumulation of stuff out there.   I would clean up only what I would spill. I used to haul some of this stuff and put it in the boxes.   I would then sweep off this sidewalk, but only what I would spill.   Mr. Stevens said, when I first went over there, for me to keep the walk clean, and if there was any rags, sweepings, or stuff he told me to throw it on one side.   I didn't pay much attention to this stuff on the sidewalk.   If I had paid attention, I could have seen it.   It was right there in front of me.   Both Schultz and I would fill up these boxes. I didn't pay much attention to it.

As it was plaintiff's duty to have kept this walk clean, he is not in a situation to complain because defendant did not see that he did so.   Whatever the servant is intrusted by the master to do for him must be performed with a like degree of care which the law holds the master to, were he acting for himself.   *Cameron v. Kenyon,* 22 Mont. 312 (56 Pac. 358, 44 L. R. A. 508, 74 Am. St. Rep. 602) ; Thompson on Negligence, section 5331.   Possibly for this neglect the master might be liable in case of injury to a third person, and there are authorities to the effect that they might be jointly sued.   See note to *Mayer v. Thompson-Hutchison Building Co.,* 104 Ala. 611 (28 L. R. A. 433).   Surely the servant cannot call upon the master to recoup for injuries suffered through his own neglect.

II.   The evidence was sufficient to carry the case to the jury on the fifth ground of negligence.   The wheel was of great weight and five feet in diameter.   The rim was crowned, but under the evidence this might have been found not to be observable by an inexperienced person.   Neither the plaintiff nor Schultz had ever undertaken to roll or assist in rolling such a wheel before.   The testimony that to do so properly and safely one man should be behind and the other steady the wheel from in front was undisputed.   Had plaintiff and Schultz proceeded in this way, each would have kept out of harm's way, and the accident would not have happened. But an inexperienced person would not be likely to select this method.   Owing to the great weight of the wheel he would be quite as likely to proceed as plaintiff and Schultz did, and, by both pushing, unsteady the wheel, and, by both undertaking to steady it, cause it to fall.   True, the great weight of the wheel was apparent, and every one must be assumed to be aware of the law of gravitation.   But a common laborer without experience ought not to be presumed to know how to roll such a wheel, without information that the rim is crowned, a considerable distance without instruction.   This conclusion is not in conflict with *Sullivan v. Nicholson File Co.,* 21 R. I. 540 (45 Alt. 549), or *Walsh v. Railroad Co.,* 27 Minn. 367 (8 N. W. 145), relied on by appellant.   The former is not in point.   In the latter complainant was injured by a top millstone, weighing about 2,000 pounds and having a bulge on one side.   The injury seems to have been caused by the stone falling to one side, owing in part at least to this bulge, and, as he was employed to handle all kinds of freight, the court held that he must be assumed to have known of the laws of gravitation, and therefore no instruction was required.   The nature of his employment was such that he undertook and assumed the risk of handling all kinds of material.

The plaintiff had been at work two months without

*4. NEGLIGENCE: failure to instruct a servant.*

being called to handle such wheels. The foreman knew this, and also of the weight of the wheel and character of its rim. There was a safe way to handle it, but this was not obvious to an inexperienced person, though known to the master. That to do the work as undertaken was dangerous appears from the result, but this was not appreciated by plaintiff or his companion. In such circumstances it was the duty of the master to instruct the servant how he could safely perform the task. This duty is incumbent on the master, even though the danger be open to observation to the skilled or experienced person, if the master knows that the servant, because of his inexperience or other cause, is likely to be unable to perform it in safety. These principles are so well established that citation of authority is not required to support them. The difficulty is in determining whether this is a proper case for their application. It is a border line case, but we are inclined to the opinion that it was a proper one for the jury to determine.

Exception is taken to the twelfth and thirteenth paragraphs of the charge, in that the court instructed recovery could not be had if the iron scraps were left on the sidewalk by the neglect of plaintiff; and it is said that words " or his co-employé Schultz " should have been added. But plaintiff and Schultz were not co-employés in the matter of clearing the sidewalk. What they did was done independent the one from the other. Any lapse of Schultz was that of the company, so far as plaintiff was concerned, and could not defeat plaintiff's right to recover when injured because of Schultz's omission to perform a like task assigned to him alone.

*5. INSTRUCTION: negligence of fellow workman.*

In the third paragraph the jury was instructed that, " if at the very time of the injury " plaintiff failed to exercise ordinary care, he could not recover. This was correct, but possibly, as contended, too narrowly limited. In other instructions the jury was fully advised of precisely what the law exacted of him. It

*6. INSTRUCTION: exercise of care.*

cannot be said as a matter of law that the accident was due to plaintiff's slipping on an iron scrap or shaving. It might have been attributed by the jury to the falling of the wheel because of being improperly handled.

The contention that the risk was assumed has been disposed of by what we have said. We are of the opinion that the evidence sustains the verdict, and that the points argued save as stated are not well taken.— *Affirmed.*