HAGERTY, RESPONDENT, v. MONTANA ORE PUR. CO. ET AL.,
DEFENDANTS; E. WILSON, APPELLANT.

(No. 2,558.)

(Submitted November 25, 1908.   Decided December 21, 1908.)

[98 Pac. 643.]

*Personal Injuries—Mines—Master and Servant—Principal and
Agent—Misfeasance—Liability of Agent—Proximate Cause—
Instructions.*

Instructions—Request—When Refusal Proper.
1.  Where a requested instruction covered the same ground as one
given, refusal to give it was not error.
Personal Injuries—Master and Servant—Safe Place to Work—Reasonable
Care—Question for Jury—Nonsuit.
2.  The question whether defendants exercised reasonable care in pro-
viding plaintiff employee a safe place in which to work, where it
appears that he was injured by the sticking of a cage in a mining
shaft, the defect in which was known to defendant superintendent,
and where there were other shafts which could have been used in safely
lowering workmen into and hoisting them from the workings, was prop-
erly submitted to the jury, even though it was shown that the super-
intendent spared neither pains nor money to keep the shaft in running
order.
Same—Negligence of Agent—Liability for Injury—Concurring Causes.
3.  If defendant mining superintendent's negligence in maintaining
a defective shaft and, with knowledge of its dangerous condition, per-
mitting its use for lowering and hoisting workmen, was a concurring
cause of plaintiff employee's injury by reason of such defect, he was
not relieved from liability merely because the negligence or incompe-
tency of the engineer in charge of the engine operating the cage may
have contributed to the injury.
Same — Principal and Agent — Nonfeasance — Misfeasance — Liability of
Agent.
4.  The term "nonfeasance" refers to an agent's omission to perform
a duty which he owes to his principal by virtue of the agency and for
which he is responsible to his principal only; but, whenever the agent's
omission consists of failure to perform a duty which he owes to third
persons, then, as to such persons, his omission is "misfeasance" for
which he is responsible.
Same.
5.  The conduct of a superintendent of a mine who had the same con-
trol of his company's property as the company would have had, had it
been a natural person and attending to the management as such, in
negligently maintaining a defective shaft and permitting its use by
employees unaware of its dangerous condition, amounted, not to non-
feasance, but to misfeasance, for injury to an employee on account of
which he was liable, where his negligence, combined with that of the
engineer in charge, was found by the jury to have been the proximate
cause of the accident.

Same—Negligence of Agent—Concurring Cause—Question for Jury.
6.  Whether the defendant superintendent's negligence, as set forth in the preceding paragraph, was a proximate cause of the employee's injury, where the negligence or incompetency of the engineer operating the hoisting engine also contributed to the happening of the accident, was a question of fact properly submitted to the jury.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

ACTION by Johnston T. Hagerty against the Montana Ore Purchasing Company, Elliott H. Wilson, and others. From a judgment for plaintiff, and from an order denying a new trial, defendant Wilson appeals. Affirmed.

*Mr. Charles R. Leonard,* and *Messrs. Gunn & Rasch,* for Appellant.

For mere omission of duty,—for nonfeasance, as distinguished from misfeasance,—the weight of authority is to the effect that the agent is not liable to third persons. (*Kelly* v. *Chicago & A. Ry. Co.,* 122 Fed. 286; *Carey* v. *Rochereau,* 16 Fed. 87; *The Bell of the Coast,* 56 Fed. 251; *Bryce* v. *Southern Ry. Co.,* 125 Fed. 958; see, also, *Colvin* v. *Holbrook,* 2 N. Y. 129; *Murray* v. *Usher,* 117 N. Y. 542, 23 N. E. 564; *Van Antwerp* v. *Linton,* 89 Hun, 417, 35 N. Y. Supp. 318, affirmed in 157 N. Y. 716, 53 N. E. 1133; *Burns* v. *Pethcal,* 75 Hun, 437, 27 N. Y. Supp. 499; *Scheller* v. *Silbermintz,* 50 Misc. Rep. 175, 98 N. Y. Supp. 230; *Delaney* v. *Rochereau,* 34 La. Ann. 1123, 44 Am. Rep. 456; *Cincinnati Ry. Co.* v. *Robertson,* 115 Ky. 858, 74 S. W. 1061; *Drake* v. *Hagan,* 108 Tenn. 265, 67 S. W. 470; *Feltus* v. *Swan,* 62 Miss. 415; *Henshaw* v. *Noble,* 7 Ohio St. 226; *Labadie* v. *Hawley,* 61 Tex. 177, 48 Am. Rep. 278; *Bullock* v. *Gaffigan,* 100 Pa. 276; Bishop on Noncontract Law, secs. 628, 695; 1 Kinkead on Torts, pp. 124, 125, sec. 68; 1 Shearman and Redfield on Negligence, 5th ed., secs. 243, 245; Black's Law & Practice in Accident Cases, sec. 72.)

An intermediate servant is not liable to a third person for the torts of the general servant; for these the master only is liable,

since the general servant is not the servant of the intermediate servant, but the servant of the master.  (5 Thompson on Negligence, sec. 5772; *Brown* v. *Lent*, 20 Vt. 529; *Bath* v. *Caton*, 37 Mich. 199; *Bacheller* v. *Pinkham*, 68 Me. 253; *Hewett* v. *Swift*, 3 Allen (Mass.), 420.)

If the accident which occasioned the respondent's injuries was due to the negligence, or the misfeasance or nonfeasance of anybody connected with the operation of the Minnie Healy mine, it was that of the foreman, or shift boss, in charge of the "Chippie" shaft, and of the person who operated the engine in lowering the cage upon which the injury was sustained.  There is a complete failure of proof to connect the appellant, by reason of any act of commission or omission on his part within the line of his duty, with the accident and the plaintiff's injury.  Where it is sought to recover upon the ground of an imputed negligent act, the evidence ought to be so direct and tangible as to satisfy the conscience of both court and jury that a case is made out. (*Atwood* v. *Chicago R. I. & P. Ry. Co.*, 72 Fed. 450; *Shaw* v. *New Year Gold Min. Co.*, 31 Mont. 138, 77 Pac. 515.)

The negligent acts of the incompetent persons who operated the engine "broke the chain of causation between the prior alleged negligence of the defendant and the injury of the plaintiff, insulated his omissions from the plaintiff's hurt, and discharged the defendant from all liability for it." (*American Bridge Co.* v. *Seeds*, 144 Fed. 605, 75 C. C. A. 407, 11 L. R. A., n. s., 1046.)

*Mr. S. T. Hogevoll,* and *Messrs. Maury & Templeman,* for Respondent.

A servant or agent is liable for a negligent omission or nonfeasance causing injury to a third person, where he would be liable if acting as principal.  (*Mayer* v. *Thompson-Hutchinson Bldg. Co.*, 104 Ala. 611, 53 Am. St. Rep. 88, 16 South. 620, 28 L. R. A. 433; *Baird* v. *Shipman*, 132 Ill. 16, 22 Am. St. Rep. 504, 23 N. E. 384, 72 L. R. A. 128; *Osborne* v. *Morgan*, 130 Mass. 102, 39 Am. Rep. 437; *Ellis* v. *McNaughton*, 76 Mich. 237, 15 Am. St.

Rep. 308, 42 N. W. 1113; *Campbell* v. *Portland Sugar Co.*, 62 Me. 552, 16 Am. Rep. 503; *Harriman* v. *Stowe*, 57 Mo. 93; *Wright* v. *Wilcox*, 19 Wend. 343, 32 Am. Dec. 507; *Lough* v. *John Davis & Co.*, 30 Wash. 204, 94 Am. St. Rep. 848, 70 Pac. 491, 59 L. R. A. 802; *Southern Ry. Co.* v. *Reynolds,* 126 Ga. 657, 55 S. E. 1039; *Ellis* v. *Southern Ry. Co.*, 72 S. C. 465, 52 S. E. 228, 2 L. R. A., n. s., 378.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was commenced by Johnston T. Hagerty against Elliott H. Wilson and others to recover damages for injuries alleged to have been sustained by the plaintiff as the result of the negligence of the defendants.

During 1904 the Hypocka Mining Company, a foreign corporation, was operating the Minnie Healy mine, in Meaderville, Silver Bow county. The defendant Wilson was the superintendent at the mine, and was actively in charge of the business of the Hypocka Mining Company in Montana. The Hypocka Company had a working arrangement with the Montana Ore Purchasing Company, by which the latter company furnished its electricians to the former to do electrical work in the Minnie Healy mine. In the course of its mining operations in the Minnie Healy mine, the Hypocka Company caused to be opened a particular shaft, designated in the pleadings and evidence as the "Chippie" shaft. This shaft was a comparatively new one and had been properly timbered, but on account of the swelling of the ground, caused by disintegration of the country rock and a consequent movement of the ground, the shaft was so compressed that for several months before the accident to Hagerty the cage running in that shaft had frequently stuck on its descent. To such an extent had the usefulness of the shaft been impaired that some time before Hagerty's injury occurred the shaft had been condemned, the engineers on the engine operating the cage had been taken from their work, and the shaft thereafter was used principally for the purpose of repairing

water-pipes and electrical apparatus in it.   On July 26, 1904, the Hypocka Company called upon the Montana Ore Purchasing Company for electricians to do some work in the "Chippie" shaft between the 1,000 and 1,100 foot levels.   Hagerty, an electrician in the employ of the Montana Ore Purchasing Company, was detailed to do this work, and while so engaged, and on July 27, he was requested to make some repairs about the 600-foot level.   It appears that, when this "Chippie" shaft was used, an engineer from elsewhere in the Minnie Healy mine was called to operate the engine which lowered and raised the cage. At the time Hagerty was injured, one Greenleaf, or Greenough, went on the engine to lower the cage.   It does not appear at whose suggestion or direction this man assumed to act as engineer, for he was not in fact an engineer, and did not have a license to operate an engine.   However, he undertook to lower the cage with Hagerty and his helper, and, when it was between 500 and 600 feet from the surface, the cage struck, and, the engine not being stopped at once, from 10 to 25 feet of cable came down into the cage, which was not lighted, and coiled about the feet of Hagerty and his helper.   After being thus suspended for some time, the cage finally worked through the pinched portion of the shaft by its own weight, and suddenly fell to the length of the slack cable.   The cable had apparently become so coiled about one of Hagerty's feet that, when the cage dropped, the cable practically cut off his foot, or at least injured it to such an extent that amputation was necessary.   It appears that this dangerous condition of the "Chippie" shaft was known to Wilson, but was not known to Hagerty.   In brief, these are the facts as disclosed by the record.

· There is not any disputed question of fact presented, for the defendants did not offer any testimony.   A motion for nonsuit was sustained as to the Montana Ore Purchasing Company, and denied as to defendants Wilson and Hypocka Company.   The court was asked, but refused to give, instructions 4 and 9, but among others gave instruction No. 6.   The instructions just referred to are as follows:

"No. 4. [Refused.] You are instructed that if the plaintiff entered the shaft at the time he was injured without the knowledge of the defendant Elliott H. Wilson, and by invitation or direction of some servant of the Hypocka Mining Company, other than said Wilson, and such person knew the condition of said shaft, your verdict should be for the defendant Wilson."

"No. 9. [Refused.] You are further instructed that, if you find from the evidence that the injury would not have occurred except for the incompetency or negligence of the engineer in charge of the engine operating the cage in the shaft, then the condition of said shaft was not the proximate cause of the injury, and your verdict should be for the defendant Wilson."

"No. 6. [Given.] You are instructed that, if the injury to the plaintiff was occasioned solely by the negligence or incompetency of the engineer in charge of the hoisting engine operating the cage in the shaft in which the injury occurred, your verdict should be for the defendant Elliott H. Wilson."

The jury returned a verdict in favor of the plaintiff and against the defendants Wilson and the Hypocka Mining Company, and, from the judgment entered thereon and from an order denying him a new trial, Wilson appeals.

We think that the proposed instruction No. 4 above was properly refused. Wilson's own testimony, offered on behalf of plaintiff, discloses that he knew the condition of the "Chippie" shaft; knew that the cage stuck occasionally; knew that the sticking of the cage would endanger life or limb if it got away as it did on the occasion of Hagerty's injury; knew that men were going down the shaft between January and August, 1904, and, in fact, had gone through there occasionally himself. He knew, also, that Hagerty was working in the shaft on the day before he was injured. Under these circumstances the offered instruction was not applicable to the facts of the case. The determining factor is not whether Wilson knew that Hagerty was making the particular trip which he did when he was injured, but whether he knew, or ought to have known, that

Hagerty was working there at the time upon the invitation of the Hypocka Mining Company.

We think, also, that offered instruction No. 9 above was properly refused. No. 6, given, completely covers the same ground. There is not any difference between the two instructions in principle. The difference is in verbiage only. No. 6 merely gives emphasis to the fact that, if the negligence or incompetency of the man operating the engine was the sole cause of the accident, then Wilson should be exonerated. No. 9 means the same thing.

But the principal contention arises over the refusal of the trial court to grant Wilson's motion for a nonsuit. It is suggested that the evidence fails to disclose any negligence on the part of Wilson. It does appear that Wilson had spared neither pains nor money to keep the shaft open. He says that he had done all that could be done, except to close down the mine and retimber the shaft. But this conclusion of his is hardly justified by the evidence. There were other shafts adjoining the "Chippie" shaft, and in which the trouble did not appear, or, if it appeared at all, to a much less degree, and, these shafts being accessible one from the other at the different stations, men could have been lowered through one of the other shafts and brought up to the place of work through the "Chippie" shaft, as it appears that the cage would not stick in its ascent. But, even if the closing of the mine was a last recourse, we are not prepared to say that it was not Wilson's duty to resort to it, rather than to invite this man to work in a known place of danger. The question whether Wilson exercised reasonable care to provide a reasonably safe place for the man to work was fairly submitted to the jury.

It is suggested, also, that, if the negligence or incompetency of Greenleaf was the cause of the injury, Wilson cannot be held liable therefor, since Greenleaf was not the servant of Wilson, but was the servant of the Hypocka Company. We agree with this, and it appears to us that the trial court also adopted that theory, and gave emphasis to it in instruction No. 6 above. But

the fact that the negligence of Greenleaf may have contributed to the injury does not profit Wilson if his negligence was a concurring cause. We think the jury must have reached the conclusion that the combined negligence of Wilson in maintaining the shaft and permitting its use under the circumstances as shown in this case, and of Greenleaf in lowering the cage, was the proximate cause of the injury.

But it is further suggested that, at most, Wilson was guilty of nonaction or omission of duty in failing to have the shaft in working order, or in not forbidding its use to men not acquainted with its character, and that such omission or nonaction amounts only to nonfeasance, for which he is not liable to a third person, but, if liable at all, he is only liable to the Hypocka Company, his principal, and that the maxim *respondeat superior* applies. If Wilson's misconduct in permitting the shaft to be out of repair and in permitting its use while in such condition amounts only to nonfeasance, then the contention of his counsel may be well founded. But we are not able to agree with them in their conclusion. Some of the cases cited by counsel for appellant seem to bear out their theory and to justify the conclusion they reach. The courts and text-writers have not always been accurate in defining the terms "nonfeasance" and "misfeasance," or in discriminating between them. As applied in cases of this character, we think the term "nonfeasance" refers to the omission on the part of the agent to perform a duty which he owes to his principal by virtue of the relationship existing between them; but, whenever the omission on the part of the agent consists of his failure to perform a duty which he owes to third persons, then, as to such third persons, his omission amounts to "misfeasance," for which he is responsible. We think this conclusion is based upon reason and authority.

Mechem in his work on Agency says: "Some confusion has crept into certain cases from a failure to observe clearly the distinction between nonfeasance and misfeasance. As has been seen, the agent is not liable to strangers for injuries sustained by them because he did not undertake the performance of some

duty which he owed to his principal and imposed upon him by his relation, which is nonfeasance.    Misfeasance may involve, also, to some extent the idea of not doing, as where the agent while engaged in the performance of his undertaking does not do something which it was his duty to do under the circumstances, does not take that precaution, does not exercise that care, which a due regard for the rights of others requires.    All this is not doing, but it is not the not doing of that which is imposed upon the agent merely by virtue of his relation, but of that which is imposed upon him by law as a responsible individual in common with all other members of society.    It is the same not doing which constitutes actionable negligence in any relation."    (Section 572.)    The supreme court of Michigan in *Ellis* v. *McNaughton,* 76 Mich. 237, 15 Am. St. Rep. 308, 42 N. W. 1113, refers to and approves the language used by Mechem quoted above.

In 1 American and English Encyclopedia of Law, second edition, 1132, it is said: ''Where the injury results    *    *    *    from such an omission of duty or act of negligence on the part of the agent as partakes of the character of a misfeasance, the agent is personally liable to third persons; the actual perpetrator of the positive wrong not being permitted to relieve himself from liability by showing that the wrong was done while he was acting in the course of his employment as agent for another.''    And, as an instance wherein nonaction or negligence was held to amount to misfeasance, the writer of the text cites the case of *Baird* v. *Shipman,* 132 Ill. 16, 22 Am. St. Rep. 504, 23 N. E. 384, 7 L. R. A. 128.    In that case it appears that one Goodman, a resident of Hartford, owned land in Chicago with a house and barn situated thereon.    The appellants, real estate agents in Chicago, were Goodman's agents, and as such had control of his property there.    The property was leased to a Mrs. Wheeler, and at that time a large door to the barn was in a very insecure condition, which fact was known to the agents, who agreed to have it repaired, but failed to do so.    An expressman seeking to deliver goods on the premises was killed by the barn door falling

upon him.  His personal representative brought the action to
recover damages from the agents.  They contended, as does Wilson
here, that their omission amounted only to a nonfeasance,
for which they were responsible to their principal only; but
the court took a different view, and, among other things, said:
"An agent is liable to his principal only for mere breach of
his contract with his principal.  He must have due regard to the
rights and safety of third persons.  He cannot in all cases find
shelter behind his principal.  If, in the course of his agency,
he is intrusted with the operation of a dangerous machine, to
guard himself from personal liability  he must use proper care
in its management and supervision, so that others in the use of
ordinary care will not suffer in life, limb, or property.  (*Suydam*
v. *Moore,* 8 Barb. (N. Y.) 358; *Phelps* v. *Wait,* 30 N. Y.
78.)  It is not his contract with the principal which exposes him
to or protects him from liability to third persons, but his common-law
obligation to so use that which he controls as not to
injure another.  That obligation is neither increased nor diminished
by his entrance upon the duties of agency, nor can its
breach be excused by a plea that his  principal is chargeable.
(*Delaney* v. *Rochereau & Co.,* 34 La. Ann. 1123, 44 Am. Rep.
456.)"  After referring to the rule as stated by Mechem and
Wharton, the opinion proceeds: "The rule, whether as stated by
Mechem or Wharton, is sufficient to charge appellants with damages
under·the circumstances disclosed in this record.  They
had the same control of the premises in question as the owner
would have had if he had resided in Chicago and attended to
his own leasing and repairing.  In that respect appellants remained
in control of the premises until the door fell upon the
deceased.  There was no interruption of the causal relation between
them and the injured man.  They were in fact, for the
time being, substituted in the place of the owner, so far as the
control and management of the property was concerned.  *  *  *
When appellants rented the premises to Mrs. Wheeler in the
dangerous condition shown by the evidence, they voluntarily
set in motion an agency which, in the ordinary and natural

course of events, would expose persons entering the barn to
personal injury. Use of the barn for the purpose for which
it was used when the deceased came to his death was one of its
ordinary and appropriate uses, and might, by ordinary fore-
sight, have been anticipated.'' This case is cited and the doc-
trine announced approved in *Mayer* v. *Thompson-Hutchinson
Bldg. Co.,* 104 Ala. 611, 53 Am. St. Rep. 88, 16 South. 620, 28 L.
R. A. 433.

Did Wilson in fact owe a duty to Hagerty? In *Cameron* v.
*Kenyon-Connell Com. Co.,* 22 Mont. 312, 74 Am. St. Rep. 602,
56 Pac. 358, 44 L. R. A. 508, it is said: ''Because directors are
themselves agents it is none the less true that they owe a com-
mon-law duty to third persons. If they violate that duty, they
are responsible, whether the violation is the result of a wrongful
omission or commission. * * * Relationship of contract to
a corporation neither adds to nor subtracts from a man's duty
to strangers to so use his own property, or that under his control,
as not to injure another.'' The record in this case would seem
to justify the same statement as that contained in the opinion
of the Illinois court above: That Wilson had the same control
at the Minnie Healy mine, so far as the management was con-
cerned, as the owner, the Hypocka Company, would have had
if it had been a natural person residing here and attending to
the management himself.

In harmony with the declaration of this court in the *Cameron
Case* above is the doctrine announced by the supreme court of
Massachusetts in *Osborne* v. *Morgan,* 130 Mass. 102, 39 Am.
Rep. 437, where, after considering and overruling a former de-
cision of the same court, it is said: ''The principal reason as-
signed was that no misfeasance or positive act of wrong was
charged, and that for nonfeasance, which was merely negligence
in the performance of a duty arising from an express or implied
contract with his principal or employer, an agent or servant was
responsible to him only, and not to any third person. It is often
said in the books that an agent is responsible to third persons
for misfeasance only, and not for nonfeasance. And it is doubt-

less true that if an agent never does anything toward carrying out his contract with his principal, but wholly omits and neglects to do so, the principal is the only person who can maintain any action against him for the nonfeasance. But, if the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts; and he cannot, by abandoning its execution midway and leaving things in a dangerous condition, exempt himself from liability to any person who suffers injury by reason of his having so left them without proper safeguards. This is not nonfeasance, or doing nothing; but it is misfeasance, doing improperly." And to the same general effect is *Breen* v. *Field,* 157 Mass. 277, 31 N. E. 1075.

In *Campbell* v. *Portland Sugar Co.,* 62 Me. 552, 16 Am. Rep. 503, the court said: "It is the actual personal negligence of the agents which constitutes the constructive negligence of the corporation. The corporation acts through and by them, and they act for the corporation, and, when their acts or neglects result in injury to third parties, they are equally responsible with their principals."

The supreme court of Georgia in *Southern Ry. Co.* v. *Reynolds,* 126 Ga. 657, 55 S. E. 1039, announced the same rule in the following language: "When once an agent enters upon the performance of his contract with his principal, and, in doing so, omits or fails to take reasonable care in the commission of some act which he should do in its performance, whereby some third person is injured, he is responsible therefor to the same extent as if he had committed the wrong in his own behalf."

In *Ellis* v. *Southern Ry. Co.,* 72 S. C. 465, 52 S. E. 228, 2 L. R. A., n. s., 378, the supreme court of South Carolina, after an extended review of the authorities, said: "The true rule deducible from the authorities is that the servant is personally liable to third persons when his wrongful act is the direct and proximate cause of the injury, whether such wrongful act be one of nonfeasance or misfeasance." In *Lough* v. *John Davis & Co.,*

30 Wash. 204, 94 Am. St. Rep. 848, 70 Pac. 491, 59 L. R. A. 802, the same conclusion is reached by the supreme court of Washington.

In *Southern Ry. Co.* v. *Grizzle*, 124 Ga. 735, 110 Am. St. Rep. 191, 53 S. E. 244, the court said: "Where an agent fails to use reasonable care or diligence in the performance of his duty, he will be personally responsible to a third person who is injured by such misfeasance. The agent's liability in such cases is not based upon the ground of his agency, but upon the ground that he is a wrongdoer, and as such he is responsible for any injury he may cause. When once he enters upon the performance of his contract with his principal, and in doing so omits or fails to take reasonable care in the commission of some act which he should do in its performance, whereby some third person is injured, he is responsible therefor to the same extent as if he had committed the wrong in his own behalf. (See 2 Clark & Skyles on Agency, 1297 et seq.)  Misfeasance may involve also to some extent the idea of not doing, as where an agent engaged in the performance of his undertaking does not do something which it is his duty to do under the circumstances, or does not take that precaution or does not exercise that care which a due regard to the rights of others requires. All this is not doing, but it is not the not doing of that which is imposed upon the agent merely by virtue of his relation, but of that which is imposed upon him by law as a responsible individual in common with all other members of society. It is the same not doing which constitutes actionable negligence in any relation."

In 1 Jaggard on Torts, 289, the author, after referring to the conflicting decisions upon this subject, says: "The futility of such reasoning on the word 'nonfeasance' appears fully from the lack of definiteness of the meaning to be given the term. This solemn legal jugglery with words will probably disappear if the nature of the duty incumbent upon the servant be considered. If the servant owe a duty to third persons derived from instrumentality likely to harm or otherwise, and he violates that duty, he is responsible. His responsibility rests on

his wrongdoing, not on the positive or negative character of his conduct. A wrongful omission is as actionable as a wrongful commission.''

Finally, it is earnestly contended that the negligence or incompetency of Greenleaf was the active and efficient cause of the injury, and that but for such negligence or incompetency the injury would not have occurred, even conceding that Wilson was negligent in permitting the shaft to remain out of order, and in permitting its use while in such condition; or, in other words, that Wilson's negligence was not a proximate cause of the injury. But we cannot concede that the mere fact that a skillful engineer, acquainted with the habits of this shaft, who knew that the cage was likely to stick and was constantly on the lookout for such an occurrence, could have stopped the engine in time to prevent the cable from running into the cage, does as a matter of law stamp the act of Greenleaf as one which broke the chain of causation between Wilson's prior negligence and Hagerty's injury, or insulated Wilson's negligence from the plaintiff's hurt, and thereby discharged him (Wilson) from all liability therefor. We think that the question whether Wilson's negligence was a proximate cause of the injury was one of fact, which was properly submitted to the jury.

We find no error in the record. The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.