BILLINGS REALTY CO., RESPONDENT, *v.* BIG DITCH CO., APPELLANT.

(No. 2,974.)

(Submitted April 7, 1911.  Decided April 29, 1911.)

[115 Pac. 828.]

*Waters—Irrigation Canals—Careless Management—Injuries to Land — Liability—Principal and Agent—Corporations and Stockholders—Complaint—Sufficiency—Waiver—Instructions —Review—Findings.*

Irrigation Canals—Injuries to Land—Description of Premises—Complaint— Sufficiency.
  1.  As against a general demurrer or objection to the introduction of evidence, a complaint seeking damages occasioned by the overflow of water from an irrigating canal, which described the land upon which the trespass was alleged to have been committed, as the north half of the northwest quarter of a certain section in a designated township, "with the exception of twenty-nine acres" theretofore sold, was sufficiently specific to identify the premises.

Complaint—Indefiniteness—Waiver.
  2.  An objection to a complaint on the ground of indefiniteness is waived unless a special demurrer on that account is interposed.

Corporation—Proof of Corporate Existence—Statutes.
  3.  Chapter 94, Laws of 1909, providing that the certificate of incorporation of companies issued by the secretary of state shall be *prima facie* evidence of their corporate character and capacity, *held* not to apply to corporations organized before the adoption of the Codes of 1895, prior to which time provision for such certificate had not been made.

Irrigation Canals—Negligence in Operation—Liability of Corporation— Negligence of Agents—Presumptions.
  4.  A corporation organized to furnish water to its stockholders for irrigation and domestic purposes was not an insurer and could be held liable in damages only for negligence of its agents—not for that of

trespassers—which negligence will not be presumed, but must be pleaded and proved.

Same—Negligence of Stockholders—Agency—Evidence—Liability of Corporation.

5.   Evidence *held* to show that defendant company had constituted its stockholders its agents in the management of its canal, by permitting them, whenever they wanted water on their premises, to so manipulate the headgate as to cause the water to run in the desired direction; *held*, further, that therefore the company was liable for any damage through flooding occasioned by their negligence in thus taking water from the canal.

Instructions—Refusal—Settlement—Objection    and    Exception—Statutory Provisions.

6.   The provision of section 6746, Revised Codes, that at the settlement of the instructions the particular grounds of objection or exception to those deemed erroneous shall be stated, else a motion for a new trial shall not be granted nor a cause reversed by the supreme court for errors in them, applies only to instructions given and not to those refused.

Same—When Refusal not Error.

7.   It is not error to refuse a correct instruction where other appropriate instructions upon the same subject have been given.

Corporations—Stockholders—Agency—Instructions.

8.   Whether a stockholder is or is not the agent of the corporation depends upon the facts of the particular case; therefore the refusal of an unqualified instruction that he is not such agent was properly refused.

Findings—Duty of District Court to Make.

9.   Under section 6763, Revised Codes, the district court in an equity case is required to make findings, whether requested to do so or not.

*Appeal from District Court, Yellowstone County; Frank Henry, Judge of the Sixth Judicial District, presiding.*

ACTION by the Billings Realty Company against the Big Ditch Company. From a judgment for plaintiff and an order denying it a new trial, defendant appeals. Affirmed.

*Mr. F. B. Reynolds* submitted a brief and reply brief in behalf of Appellant, and argued the cause orally.

The complaint in this case fails to state a cause of action, for the reason that it does not describe the property which it is alleged was damaged. The property involved in an action should be sufficiently described for identification. (6 Ency. Pl. & Pr. 259; *People* v. *Mariposa Co.*, 31 Cal. 196; *People* v. *Pico*, 20 Cal. 596; *Atwood* v. *Atwood*, 22 Pick. (Mass.) 283; *White* v. *Hapeman*, 43 Mich. 267, 38 Am. St. Rep. 178, 5 N. W. 313.)

Not a particle of evidence was introduced in plaintiff's case showing any negligence on the part of defendant. Defendant is not liable for damages from the overflow of its ditch unless such overflow occurs through negligence. (Wiel on Water Rights, sec. 163; Long on Irrigation, sec. 69; 3 Farnham on Waters and Water Rights, sec. 634; 17 Ency. of Law, 2d ed., 512; 1 Thompson on Negligence, sec. 706; *Fleming* v. *Lockwood,* 36 Mont. 384, 122 Am. St. Rep. 375, 92 Pac. 962, 14 L. R. A., n. s., 628, 13 Ann. Cas. 263; *King* v. *Miles City Irr. Ditch Co.,* 16 Mont. 463, 50 Am. St. Rep. 506, 41 Pac. 431; *Lisonbee* v. *Monroe Irr. Co.,* 18 Utah, 343, 72 Am. St. Rep. 784, 54 Pac. 1009.)

Negligence cannot be presumed, but must be proven. It cannot be assumed that the ditch owner has been guilty of negligence because of the fact that damage has resulted from the operation of the ditch, but such negligence must be proven. (Long on Irrigation, sec. 68; Wiel on Water Rights, sec. 163; *Greeley Irr. Co.* v. *House,* 14 Colo. 549, 24 Pac. 329; *Fleming* v. *Lockwood,* 36 Mont. 384, 122 Am. St. Rep. 375, 92 Pac. 962, 14 L. R. A., n. s., 628, 13 Ann. Cas. 263; *Tenney* v. *Miners' Ditch Co.,* 7 Cal. 335, 11 Morr. Min. Rep. 31.) ·

Plaintiff having failed to prove negligence, the court should have granted motion of defendant for direction of verdict.

Defendant ditch company cannot be held to be an insurer against the overflow of its ditch and consequent damage to the plaintiff. (Long on Irrigation, sec. 69; 3 Farnham on Waters and Water Rights, 634; *King* v. *Miles City I. D. Co.,* 16 Mont. 463, 50 Am. St. Rep. 506, 41 Pac. 431; *Fleming* v. *Lockwood,* 36 Mont. 384, 122 Am. St. Rep. 375, 92 Pac. 962, 14 L. R. A., n. s., 628, 13 Ann. Cas. 263.)

Ditch companies are required to anticipate and prepare to meet only such emergencies as may reasonably be expected to arise. (Long on Irrigation, sec. 169; Wiel on Water Rights, sec. 164; 3 Farnham on Waters and Water Rights, 634; *Lisonbee* v. *Monroe Irr. Co., supra.*)

The evidence in the case conclusively shows that the defendant did not, through any of its officers or employees, turn the water into the ditch in question. As the water was turned in

by someone, then, by the process of elimination, it must have been either by a stockholder or by a trespasser. Therefore, if defendant is to be held liable in this action, it must be on the theory that a ditch company is liable for the negligence either of a stockholder or of a trespasser. That the company could not be held liable for the acts of a trespasser, see 1 Thompson on Negligence, sec. 701, citing *Box* v. *Jubb*, 4 Ex. Div. 76. Nor can it be held liable for the negligent acts of a stockholder in irrigating his land. (3 Farnham on Waters and Water Rights, 1992.) The company is simply the agent to deliver the water to the headgate from which the stockholder takes his water; there such agency ceases. Up to that point the company is in a sense a common carrier, and after delivery of the water to the headgate, it is no more responsible for the water so delivered than is a railroad company after delivery of freight to the shipper. (*Farmers' High Line Canal etc. Co.* v. *White*, 32 Colo. 114, 75 Pac. 415; *Wyatt* v. *Larimer & Weld I. Co.*, 18 Colo. 283, 298, 36 Am. St. Rep. 280, 33 Pac. 144; Long on Irrigation, sec. 126.)

In behalf of Respondent, *Mr. W. M. Johnston* and *Mr. H. J. Coleman* submitted a brief. *Mr. Johnston* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

About 1882 the Minnesota & Montana Land & Improvement Company constructed a large irrigation canal which tapped the Yellowstone river some twenty-five miles west of Billings, and, following a general easterly direction, terminated upon the land of the plaintiff. In 1900 the defendant succeeded to the ownership and control of the canal, and has since operated it for the purpose of furnishing water for irrigation and domestic uses. About November 1, 1908, a large quantity of water flowed through the canal and out over plaintiff's lands, carrying away the soil and injuring the premises. This action was commenced by plaintiff to recover damages in the sum of $1,000, and to

secure an injunction restraining the defendant from permitting water to flow through the canal to the east terminus, until such time as ample means were employed to care for the surplus. It is alleged that the defendant company has been negligent in failing to equip its canal with wasteways or other means to care for or control the surplus water in the canal, and in failing to provide any means for caring for the water which flowed through the canal to the eastern terminus, and the result of such negligence was the injury to plaintiff's lands. The answer denies any negligence or any injury or damage to plaintiff's property. The trial upon the questions of negligence and damage resulted in a verdict and judgment in favor of plaintiff, and the trial court ordered an injunction in conformity with the prayer of the complaint. The defendant appealed from the judgment and from an order denying it a new trial.

1. In the complaint plaintiff's lands are described as "the north half of the northwest quarter of section thirty-two, in township one, north of range twenty-six east of the Montana Meridian, in Montana, with the exception of twenty-nine acres of said subdivision of land heretofore sold by plaintiff to third parties, but which said twenty-nine acres are in no way affected [1] by the washout and excavation hereinafter mentioned." It is now insisted that the complaint does not state a cause of action, for the reason that the land injured is not described sufficiently. It may be admitted that if the execution to be issued upon a judgment rendered in this action would operate directly upon the land in question, as, for instance, in the case of the sale of the land itself, or if it was sought to enforce a tax or other lien, the description herein given might not be sufficiently specific to enable the proper officer to identify it; but in an action for damages for trespass, where the property enters into the controversy only incidentally, much less particularity is required in describing it. All that the plaintiff is called upon to do is to inform the defendant, with reasonable certainty, of the location of the property upon which the trespass is alleged to have been committed, to the end that a defense may be made or a plea of former adjudication thereafter interposed, if another action

should be instituted for the same injury. There was not any special demurrer or motion to make more specific interposed, and as against a general demurrer or objection to the introduction of evidence this complaint sufficiently meets the requirements of the rule. (*Gulf Ry. Co.* v. *Jagoe* (Tex. Civ. App.), 32 S. W. 1061; *Lake* v. *Loysen,* 66 Wis. 424, 29 N. W. 214; 21 Ency. Pl. & Pr. 818.) If it be assumed that the complaint is indefinite in [2] the description of the land involved, an objection to it on that account must be made by special demurrer, or it is deemed waived. (Rev. Codes, sec. 6539.)

2. The corporate existence of the plaintiff was put in issue by the pleadings, and upon the trial plaintiff offered, in evidence of such corporate existence, the original articles of incorporation on file in the office of the county clerk of Yellowstone county, and a certified copy thereof from the office of the secretary of state. Objection was made to the offered evidence, but the objection was overruled, and it is insisted that the legislature has provided the method for proving corporate existence, and that such method must be deemed to be exclusive. The legislation to which reference is made is Chapter 94, Laws [3] of 1909. This chapter provides that the certificate of incorporation issued by the secretary of state shall be admitted, and shall be *prima facie* evidence of the corporate character and capacity of the corporation and of its right to transact business. The chapter contains a general repealing clause. The evidence discloses that this plaintiff corporation was organized in 1891 for the term of twenty years. Prior to the adoption of the Codes of 1895, our corporation laws were contained in the Compiled Statutes of 1887, and amendments thereto, found in the legislative Acts of 1893. Prior to 1895, there was not any provision of law for the issuance of certificates of incorporation, and, as a matter of fact, such a certificate was never issued prior to July 1 of that year. Neither is there any provision for the issuance of a certificate, since 1895, to a corporation formed prior thereto. Section 447, Fifth Division, Compiled Statutes of 1887, provides that proof of corporate existence shall be made by the production of a certified copy of the articles of incorporation

from the office of the secretary of state. If the provisions of Chapter 94 above be held to declare the only rule of evidence in a case of this character to which a corporation is a party, then as to every corporation organized prior to 1895 there cannot be any proof of corporate existence, which is tantamount to denying such corporations access to our courts. But manifestly Chapter 94 above cannot refer to a corporation organized prior to July 1, 1895; for by its terms it applies only to corporations to which certificates of incorporation have been issued, or, what is the same thing, to corporations organized since the adoption of the Codes. The ruling of the trial court was correct.

3. Defendant moved for a directed verdict, but the motion was overruled. It is insisted that there is not any evidence of [4] negligence on the part of the defendant corporation. The defendant company was not an insurer and could be held liable only for negligence, and its negligence will not be presumed, but must be pleaded and proved. (*Fleming* v. *Lockwood*, 36 Mont. 384, 122 Am. St. Rep. 375, 92 Pac. 962, 14 L. R. A., n. s., 628.) Unless the record furnishes some substantial evidence of negligence, the judgment cannot stand.

As indicated above, when the canal was first constructed, its eastern terminus was on plaintiff's property. Witnesses for the defendant testified that in 1900, after the canal was taken over by the present owners, the eastern terminus was changed to a point about a quarter of a mile west, permitted to remain there for some two years, and then again changed to a point about half a mile farther west and near the south quarter corner of section 30, where a dam was thrown across the canal, with a headgate in it, and a spillway placed in the canal to permit the surplus water to flow out down a flume and into a ravine; that this condition has prevailed since; that since constructing the spillway the defendant company has not used that portion of the canal from that point eastward, but it has been used by individual stockholders and water users as a lateral; that there are four or five stockholders who use the water [5] from the canal at points east of the spillway; that it has

always been the custom for water users to turn the water from the canal into their laterals, and for those who used water east of the spillway to turn the water down the old canal at that point; the company merely exercising supervision, to the end that no more water should be taken by any individual user than the amount to which he was entitled.

The contention of appellant is, that having abandoned the eastern portion of the canal, it is not liable for damages arising from the negligent mismanagement of the canal eastward from the spillway, and, since the injury complained of resulted from the flow of water through this eastern section, liability therefor cannot attach to defendant, unless it was negligent in causing or permitting such flow. It appears from the evidence without contradiction that sometime in September the water was turned off at the head of the canal, but later was turned in again by the defendant company to supply domestic needs of some stockholders who had the right to the use of the water at that time. It appears also that from the spillway eastward the canal is filled somewhat with silt, and in order to get water through that portion it is necessary to place flash-boards in the spillway to raise the water and force it eastward; that, if left entirely open, the spillway will ordinarily discharge the full capacity of the canal. On the part of the plaintiff, the evidence tends to show that stockholders were using the water through the canal east of the spillway immediately prior to the overflow complained of; that the headgate in the canal at the spillway was so far defective that it did not regulate or control the water in the canal; but if flash-boards were in the spillway the water would flow eastward whether this headgate was open or closed. While there is not any direct evidence of the fact, it is fairly inferable from the record that the water which caused the injury to plaintiff's premises was turned down from the spillway by some stockholder who was entitled to use it, and who, in order to accomplish this purpose, must have placed the flash-boards in the spillway. It appears that some two or three weeks before the accident the defendant company's ditch superintendent had taken the flash-boards out of the spillway and closed

the headgate; but it also appears that some of the stockholders were using water below the spillway after that time and immediately before the accident.

Touching the use of the canal below the spillway, the superintendent of the ditch company testified that it was used as a lateral. The president of the company testified that after the spillway was constructed the company did not use the canal below the spillway, but it was used as a lateral by those interested below. On cross-examination he testified that the defendant company put in the dam, headgate, and spillway; that "the stockholders had nothing to do with it. That is all the company ever did toward abandoning the ditch from that point to the stone quarry. The company did not enter into any agreement with the stockholders below the spillway in regard to taking over the ditch from that point to the stone quarry as a lateral." It appears that the stone quarry mentioned is at the point where the canal originally terminated at plaintiff's land. Other witnesses testified that there was not any appreciable change in the use of the canal below the spillway, after the spillway was constructed, from the use before that time. The defendant company did own the canal throughout its entire length. It has not done anything to devest itself of such ownership; and, while it might abandon a portion of the canal, it cannot thereby relieve itself of liability, if in fact it continued to use that portion. Whether it did continue to use such portion was a question of fact for the determination of the jury, and this fact having been resolved against the defendant, the question then arises: Was the defendant liable for damages resulting from a negligent misuse of this portion of the canal under the circumstances disclosed?

It will be conceded that the mere ownership of the canal does not carry with it liability for damages arising from its negligent misuse. It must be shown further that such negligent misuse was occasioned by the defendant. It would not be liable for the wrongful acts of a trespasser upon its property. The defendant, being a corporation, can act only through agents, and, in order to hold it liable in this instance, it must appear that

the wrongful act was committed by some one who was the agent of the defendant in turning in the water which caused the injury. As said above, we think there is sufficient evidence to show that the water was turned down the canal below the spillway by some stockholder who had a right to the use of the water at that time. It is not of moment now to consider or determine the precise relationship existing between a corporation organized to supply water for irrigation or domestic uses and its stockholders generally. The pleadings determine that this canal was owned exclusively by the defendant corporation, and for any negligent misuse by the defendant the corporation is liable.

The evidence discloses without contradiction that the headgate below the spillway was placed there by the defendant, and it might well be said that there is little, if any, contradiction in the evidence that the headgate was so far defective in its construction and operation as to be unfit for the uses it was intended to serve. It is also clear that the defendant had not made any provision for caring for surplus water which might reach the eastern terminus of the canal at plaintiff's land. On the contrary, the evidence shows that during the irrigation season of 1908 water flowing through the canal ran out the eastern terminus and over plaintiff's property for a considerable portion of time. The evidence is altogether uncontradicted that whenever a stockholder wanted water he went to the canal and turned it out, and that whenever a stockholder wanted water below the spillway he went to the spillway, placed the flash-boards in, opened the headgate, and helped himself, and that this custom was known to and approved by the defendant. Under these circumstances the ditch company cannot be heard to say that the act of a stockholder in turning down the water was authorized for all purposes beneficial to the stockholder, but unauthorized if, perchance, damage resulted from the act. The evidence seems to be ample to show that the defendant company had constituted its stockholders its agents in the management of its canal, to the extent that they were authorized

to change the conditions at the spillway and headgate, so that water would flow through the canal below that point.

We think the evidence sufficient to go to the jury, and that the motion for a directed verdict was properly denied.

4. Error is predicated upon the refusal of the trial court to give certain instructions requested by defendant. Counsel for respondent suggest that if the provisions of section 6746, Revised Codes, apply to offered instructions which are refused, in that the particular grounds of objection or exception shall be stated, then appellant is not in a position to urge these specifications of [6] error. It seems to us, however, that those provisions apply only to instructions given. The last paragraph of subdivision 5 of section 6746 reads as follows: "No motion for a new trial on the ground of errors in the instructions given shall be granted by the district court unless such errors were specifically pointed out and excepted to at the settlement of the instructions, as herein provided; and no cause shall be reversed by the supreme court for any error in instructions, which was not specifically pointed out and excepted to at the settlement of the instructions as herein specified, and such error and exception incorporated in and settled in the bill of exceptions or statement of the case as herein provided." When a party offers an instruction and the court refuses to give it, there would seem to be nothing further for him to do but to take his exception and have it settled in a bill of exceptions, or statement of the case.

The court refused the defendant's offered instruction No. 4, to the effect that defendant is not an insurer, but liable only for its negligence. The instruction correctly states the law; but the subject was thoroughly covered by other instructions, particularly by 5 and 7 given, in which the court emphasized to the jury the fact that the defendant could be held liable for injury only upon proof of negligence. It is not error to refuse [7] an instruction, even though it correctly states the law, if other appropriate instructions upon the same subject have been given. (*Townsend* v. *City of Butte,* 41 Mont. 410, 109 Pac.

969.) To multiply instructions only confuses the jury. For the same reason instruction No. 7, offered, was properly refused.

Instruction No. 6, offered and refused, appears to us not to be applicable to the facts disclosed by this record. The defendant did not discharge its liability altogether by arranging its headgate and spillway some time prior to the accident. It permitted water to flow in the canal, and it could not have been done for any purpose other than to supply the needs of stockholders, including those who used water below the spillway; and, since the defendant had in effect authorized its stockholders to change conditions at the spillway to get water to the eastward, it could not say that it did not anticipate that water would be used below that point after it had adjusted the spillway and headgate.

Offered instructions 8, 10, and 11 were properly refused. It cannot be said, as a matter of law, that a stockholder is not [8] the agent of the corporation. Whether he is such agent depends upon the facts of the particular case, and in this instance we think it is very clear that the stockholders were constituted the agents of the defendant company, for certain purposes at least. The instructions given by the trial court seem to have presented the issues to the jury fully.

The defendant objected to the court making findings of fact and conclusions of law upon the equity branch of the case, upon the ground that plaintiff did not request such findings at the [9] conclusion of the evidence. Section 6763, Revised Codes, requires such findings to be made by the court, whether there is any request for them or not. While it is true that error cannot be predicated upon the trial court's refusal to make findings, unless requested (section 6766), the failure of counsel to make the request does not relieve the court of its duty under section 6763.

The cause appears to have been tried exceedingly well upon the part of court and counsel, and with the result we do not feel justified in interfering.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.