# N. D. HILL *vs.* JOHN CAVERLY, JOHN WILLIAMS and JOS. CAVERLY.

Where a servant, by the command of his master, does an apparent wrong to a third person, both the master and the servant are liable.

But, a servant, or deputy, is not liable to a third person merely for not doing that which it was the duty of the master to do.

Thus, where a master, having an unsafe and insufficient dam across a stream of water, ordered his servant to shut the gate and keep it shut until ordered to raise it, and the servant obeyed the order, by means of which the water was raised so high that the dam broke away, and an injury was done to a third person, it was held, that the servant was not liable.

TRESPASS ON THE CASE. The declaration alleged, that the plaintiff, on the 1st January, 1823, was, and ever since had been, seized and possessed of a certain tract of land in Strafford, in this county, adjoining Bow pond river.

That the defendants, (having on the 1st January, 1823, and on divers days and times between that day and the 1st September, 1831, wrongfully and injuriously built, made, constructed and erected the same) a certain insufficient, feeble and badly constructed dam, twenty-one feet high, and twelve feet higher than was lawful, across the natural bed and channel of said river, a little below the outlet of Bow Pond, and about five rods above the plaintiff's said land, from the 1st September, 1831, to the 14th March, 1832, unlawfully, wrongfully and injuriously did support, maintain and keep up, by means of which insufficient, feeble and badly constructed dam, so wrongfully kept up, supported and maintained by the defendants, they, from the 1st September, 1831, to the 14th March, 1832, unlawfully, injuriously, negligently and imprudently obstructed and detained from its accustomed course, all the water of the said river, and prevented the same from running by the plaintiff's land, as of right it ought ; during all which period last mentioned the water of the river, by reason of the dam aforesaid, support-

ed, kept up and maintained as aforesaid, and by reason of the obstructing, stopping and detaining thereof, by the defendants as aforesaid, was negligently, imprudently, wrongfully and injuriously raised and kept twelve feet higher than it was lawful to raise and keep up the same. And that on the 14th March, 1832, the water of said river and pond, in consequence and by reason of its having been so wrongfully and injuriously obstructed by the defendants, bursting from its wrongful confinement by sweeping away the dam, and leaving its accustomed channel, overflowed the plaintiff's land, and destroyed his buildings, goods and chattels.

The cause was tried upon the general issue, at January term, 1834.

It appeared, that in the year 1794 a dam was made and a saw-mill erected at the outlet of Bow Pond. The saw-mill continued there until the 14th March, 1832. The ground upon which the dam was built being unfavorable, it broke away three or four times prior to 1823.

On the 1st December, 1822, the Dover Manufacturing Company became the owner of the mill, the dam, and the mill-privilege, and in the years 1823 and 1824 caused a new dam to be erected, eleven feet higher than the old dam. The defendant, Williams, as the agent of the company, superintended the erection of the new dam, and gave directions respecting it. John Caverly also directed in the building of the dam, as an agent of the company; and both John and Joseph Caverly labored in constructing it as servants and agents of the company.

Owing to the nature of the ground, the great body of water, and the manner of its construction, the dam was insufficient and insecure.

The said Williams, as agent of the said company, and John Caverly under him as the servant of the company, controlled the gates and dam until the 2d December, 1829, when the said Dover Manufacturing Company conveyed all their interest in the premises to the Cocheco Manufacturing

Company. From that time up to the 14th March, 1832, the last mentioned company controlled and used the water, and the said John Caverly acted as their agent for the purpose.

On the 12th February, 1829, the Dover Manufacturing Company leased to John Caverly the saw-mill at the outlet of the pond, for a term which had not expired on the 14th March, 1832, he agreeing to follow the directions of the company in every thing relating to the stoppage or flowage of the water in said pond.

For some time prior to the 14th March, 1832, there were indications that the dam was defective and dangerous; and on that day, by reason of its defects, it broke away, and thus caused the destruction of the plaintiff's property, mentioned in his declaration.

The court being of opinion that upon the foregoing case the action could not be sustained against these defendants, directed a nonsuit, subject to the opinion of this court.

*Christie*, for the plaintiff.

*I. Bartlett*, for the defendants.

*By the Court.* RICHARDSON, C. J. The injury of which the plaintiff complains, is, that the defendants, by means of a feeble and badly constructed dam, wrongfully and injuriously raised and kept up the water in the pond twelve feet higher than was lawful, from the 1st September, 1831, to the 14th March, 1832, by reason of which the water broke away the dam, and did the damage stated in the declaration. The damage is not alleged to have resulted from any defect in the dam, rendering it unfit to answer any lawful purpose for which it was erected, but from raising the water, by means of the dam, twelve feet higher than was lawful. The action is founded, then, not on any negligence of the defendants, in the construction of the dam, but upon an im-

proper use of it between the 1st September, 1831, and the 14th March, 1832. Such being the nature of the action, it is clear it is not maintained by the evidence against Williams and Joseph Caverly. They had no concern with the gates of the dam after the 2d December, 1829.

John Caverly stands on different ground. From the 2d December, 1829, until the dam broke away, he acted as the agent of the Cocheco Company at the dam. But that company had the control and use of the water during the whole time; and he had contracted with the Dover Company, under whom the Cocheco Company claimed the premises, and who had leased the saw-mill to him, to follow the directions of the lessors in every thing relating to the stoppage or flowage of the water in the pond.

He must, then, be considered as the mere servant of the Cocheco Company, acting in all he did under the immediate direction and control of the company, or their agents.

The question then, is, whether the facts disclosed in the case render him liable?

Nothing is stated in the case which shows any want of right in the Cocheco company to raise the water to the height it was raised. If the action can be sustained at all, it must be on the ground that it was imprudent and improper to raise such a head of water with such a dam.

When a servant, by the command of his master, does an apparent wrong, both the master and the servant are liable. *Buller's N. P.* 47.

And when a servant, in the absence of his master, went into an improper place with a coach and two ungovernable horses, in order to train them there, and the servant not being able to govern the horses, they ran upon an individual and wounded him—it was held, that both the master and the servant were liable. 2 *Lev.* 172, *Michael* vs. *Alestree.*

When a servant, by command of his master, hires hands to do work, and they do a wrong, the master, and not the

servant who hires the wrong doers, is liable. 6 *D. & E.* 411, *Stone* vs. *Cartwright.*

A servant or deputy cannot be charged for mere nonfeasance. 1 *Chitty's Pl.* 72 ; 12 *Mod.* 488.

Thus, in England an under-sheriff is a mere servant of the sheriff, and no action lies against the under-sheriff for a mere breach of duty. *Cowper,* 403 ; 5 *N. H. R.* 456.

No action can be maintained against a servant, unless he can be considered as a wrong doer. He is never liable for any negligence of his master.

If he aids or assists in a wrongful act, he is liable. 1 *Wilson* 328, *Perkins* vs. *Smith.*

In this case, John Caverly shut the gate, and left it shut till the dam gave way. The shutting of the gate was no wrongful act to any body. The owners had a right to raise a head of water as high as the dam would safely bear. If the gate ought to have been raised sooner, that was business of the owners, and not of John Caverly. He had no authority to raise it, except when directed so to do.

The case discloses no wrongful act, no breach of duty, in John Caverly, no negligence which can render him liable to this plaintiff.

*Judgment for the defendants.*