## 22253. DOVER *v.* GEORGIA POWER COMPANY.

Decided March 1, 1933. Rehearing denied March 4, 1933.

*M. Felton Hatcher,* for plaintiff.

*Felton & Felton, Colquitt, Parker, Troutman & Arkwright,* for defendant.

Per Curiam. H. A. Dover brought an action against the Georgia Power Company to recover for damage alleged to have been done to cotton, cottonseed, and other personal property of plaintiff, by the breaking of a dam of the defendant company and the consequent flooding of the warehouse and other property of the plaintiff, which warehouse and property were located in the town of Montezuma, below defendant's said dam. Upon the conclusion of the plaintiff's evidence the court granted a nonsuit, and the controlling question is whether that judgment was erroneous.

"While, as a general rule, allegations of fact are to be construed most strongly against the pleader, yet, in the absence of special demurrer, where the facts alleged in a petition are such as would be proper and adequate to support one form of action, but inadequate, although appropriate, to another form of action, and where the petition is ambiguous to the extent that the pleader's intention is not

clearly manifest as to which form of action is relied upon, the courts in such a case, in endeavoring to ascertain the plaintiff's intention, will prima facie presume that his purpose was to serve his best interest, and will construe the pleadings so as to uphold and not to defeat the action." *Stoddard* v. *Campbell*, 27 *Ga. App.* 363 (3) (108 S. E. 311). See also *Crossgrove* v. *A. C. L. R. Co.*, 30 *Ga. App.* 462 (3-a) (118 S. E. 694). There being no demurrer for duplicity filed in this case, under the above-stated rule, we hold that the petition does set out a cause of action based upon negligence. Whether it also sets out an action based upon nuisance is immaterial.

The defendant, being an alienee of the property, was not responsible for the defective construction of the dam, unless it had notice of the defects therein, if any. If it did not have notice of the defects in the construction, its duty was only to maintain the dam without negligence on its part. Negligence must be shown in order to recover in this action, and negligence is a failure to exercise due care; and due care in this case is such care as the party erecting, maintaining, or operating the dam is bound to use, and is in proportion to the extent of the injury which will be likely to result to third persons, provided the dam should prove insufficient and be swept away. Such a measure of prudence is required in such cases as a discreet person would use if the whole risk were his own. The general rule is that it is not enough that the dam is sufficient to resist ordinary floods. Great freshets must be guarded against, if the stream is occasionally subject to them. City of New York *v.* Bailey, 2 Denio, 433. But if the dam is washed away by a phenominal or extraordinary flood, such as no one would reasonably have anticipated, its owner is not liable for resulting damages (40 Cyc. 683m (C)), provided no act of negligence of the defendant was the proximate cause of the break. See *Parrish* v. *Parrish*, 21 *Ga. App.* 275, 276 (94 S. E. 315).

In the present case the evidence shows in part that the dam had been built about eighteen years; that the power company purchased the dam on May 4, 1931; and that about three years before the present break there was a small break (it not appearing from the record that the power company had any knowledge of this break). There was no evidence that the defendant had made any material change in the dam, or that it had operated the power plant since its

purchase. The evidence further showed that the dam was 350 feet long and 18 feet high; that about 40 feet of the dam was concrete; that in the concrete part were located six gates, each about five feet wide; that there was a seventh gate "which let the water into the turbine at the power-house;" that when the gates were down they extended halfway the height of the dam; that gates 2, 3, 5, and 6 were made in the dam and extended half way to the top of it, which would allow the water, if high enough, to flow over the tops of the gates; that gates 1 and 4 were removable, but "were in there the morning the thing happened." As to the seventh gate that "lets the water into the turbine," witness did not know its size, and did not know whether it had been removed or not. There was a little gully on the eastern side of the dam, used for overflow; but the witness testified: "I don't know whether you will call it a spillway or not." "The dam looked like water had run over all the way."

We think the case should have been submitted to the jury, for them to say whether the removable gates were raised, and, if not raised, whether the power company was negligent under all the circumstances; and also whether logs and trash had accumulated in front of the gates, and, if so, whether the defendant had knowledge of this, or whether such accumulations had been there so long that the defendant, in the exercise of due care, should have known of their presence; and finally, whether the passage of the water was so obstructed as that such obstruction was the proximate cause of the breaking of the dam. We are not attempting to set out all the evidence, and are not deciding that the plaintiff should recover under the evidence, but are only deciding that under all the evidence it was for the jury to say whether or not the plaintiff should have recovered. We hold that the judge committed error in granting the nonsuit.

*Judgment reversed. Stephens, Sutton, and Guerry, JJ., concur.*