FARMERS UNION OIL CO., A CORPORATION, PLAINTIFF AND APPELLANT, *v.* S. A. ANDERSON AND FLORENCE V. ANDERSON, DEFENDANTS AND RESPONDENTS.

No. 9461.

Submitted February 23, 1955.   Decided December 8, 1955.

291 Pac. (2d) 604.

Sanders, Cresap and Koch, Sidney, for appellant.

Leavitt and Lucas, Miles City, for respondents.

Mr. V. G. Koch and Mr. W. B. Leavitt argued orally.

HON. W. W. LESSLEY, District Judge (sitting in place of MR. JUSTICE ANGSTMAN, disqualified).

This is an appeal from a judgment in favor of defendants,

based on a jury verdict, in an action brought by plaintiff to recover damages caused by flooding of plaintiff's property, as the result of the breaking of two dams owned by the defendant Florence V. Anderson.

These are the pertinent facts from the record: August Vaux is the father of Florence V. Anderson, one of the defendants; defendant S. A. Anderson is the husband of Florence V. Anderson. Two dams were constructed by August Vaux upon his land; these dams were across the channel of Lone Tree Creek, approximately three miles west of Sidney, Montana. The lower dam was completed in 1936; the upper dam was completed in 1944, but was enlarged and a new spillway installed during the winter of 1947-1948; the work started in November of 1947 and continued through that winter to completion in the spring of 1948. The upper dam was attached to a north hill (largely gravel) and to a south hill (largely clay). In the construction of the dam, sand and gravel were taken from the north hill and dumped in the north side of the dam on the downstream side. It was mostly clay that formed the south side of the dam; no trench was dug on the downstream side of the old dam before construction was started, nor was the dam "keyed" into the north abutment, nor were the gravel, sand and clay mixed, nor packed, nor sprinkled.

The spillway, prior to this construction, ran to the south from the upper dam, during the enlargement process it was changed to run north through the gravel hill and finally into what is called Bronson Creek. The spillway as constructed measured at its throat 64 square feet with a 12 foot width at the bottom; this meant that with the dam full, the spillway would allow a flow through it of 930 cubic feet per second. The free board was 4.6 (this is the distance between the highest point of the spillway and the lowest point on the dam). As so designed and built during the enlargement process, the spillway crossed an old county road; a bridge was constructed over the spillway by the County of Richland. This bridge collapsed somewhere near the time the upper dam went out.

The lower dam held about 331 acre feet of water (approximately 107,856,350 gallons of water) and the enlarged upper dam about 680 acre feet (approximately 220,000,000 gallons of water).

On March 26, 1951, at about 2:15 a. m., the upper dam broke and carried with it the lower dam. The water and ice so released caused the damage to plaintiff's property for which plaintiff sought damages.

The history of the ownership of the land on which dams were constructed and which is pertinent to our decision is as follows: August Vaux acquired the land in 1912; he personally occupied and farmed it until the spring of 1948; he then leased it to one Clifford Jensen for a two year term, ending January 1, 1950. Until his illness in April 1949 Vaux personally handled and operated his business, and had provided in the Jensen lease that he retain control of the lands so leased. On June 25, 1945, Vaux executed a deed (he had written in longhand) of the lands to his daughter Florence V. Anderson; he kept this deed until July 1949, when he instructed Florence to take the deed and place it on record. This she did. From and after July 1949, Florence V. Anderson maintained and operated the dams and managed the ranch lands on which they were located. She knew of the enlargement of the upper dam, construction of the spillway, she was out at the dams at various times, she was interested, and if any redressing was needed in her opinion, she ordered it done to the dams.

The defendant, S. A. Anderson, husband of Florence, had been out to the ranch lands and to the dams. All other facts spelled out by the testimony in this case are clearly in conflict.

Appellant's six specifications of error may be singularized as approaches to the application of the *res ipsa loquitur* doctrine, which appellant insists, controls the case now before us. Further, that under the authority of Whitney v. Northland Greyhound Lines, Inc., 125 Mont. 528, 242 Pac. (2d) 257, certain instructions given by the lower court, over plaintiff's ob-

jection, are clearly error, as being incompatible with the doctrine of *res ipsa loquitur.*

The court did allow an instruction on the doctrine of *res ipsa loquitur* to go to the jury (court's instruction 23). It reads as follows: "You are instructed that when an instrumentality which causes injury, without any fault of the injured person, is under the exclusive control of the defendants at the time of the injury, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, then the law infers negligence on the part of the ones in control as the cause of the injury."

It is equally true under the Whitney case, supra, that the giving of court's instruction 28 was error. It is: "You are instructed that negligence on the part of the defendant is not to be presumed. The plaintiff is required to prove the negligence of the defendant as is alleged in its complaint by a preponderance of the evidence and the negligent act or acts proven, if any, must be the particular acts alleged in plaintiff's complaint. If you find that the evidence bearing on the question of negligence on the part of the defendant is evenly balanced or it preponderates in favor of the defendant then in that case the plaintiff cannot recover."

The court refused defendants' offered instructions 19 and 20, which deal with an analysis and refinement of the same *res ipsa loquitur* doctrine. Appellant argues error in giving defendants' offered instruction 8 as court's 31 in that it is error under the doctrine insisted upon by appellant, as dominating the law side of this case.

The impounding of water in a reservoir for irrigation is an important and integral part of this state's economy. It is a public use. Constitution of Montana, Art. III, section 15. This Court has held that public interest requires that water be conserved and not allowed to waste to place the arid lands of this state to productive use. Donich v. Johnson, 77 Mont. 229, 250 Pac. 963; Federal Land Bank v. Morris, 112 Mont. 445, 116 Pac. (2d) 1007. The right to gather and store water in a

reservoir for irrigation purposes is lawful business. Jeffers v. Montana Power Co., 68 Mont. 114, 217 Pac. 652; Ryan v. Quinlan, 45 Mont. 521, 124 Pac. 512. Under the circumstances in the case at bar the doctrine of *res ipsa loquitur* has no application. We so hold. The giving of the instruction on it was therefore error.

It now remains for us to decide whether this error is sufficient to require a reversal of the verdict of the jury and judgment based thereon. Elsewhere in the instructions in this case the jury were told that the burden was on the plaintiff to prove by a preponderance of the evidence that the negligence of the defendants was the proximate cause of the injury. An examination of the instructions given in light of the evidence shows the effect of giving the *res ipsa loquitur* instruction was harmless. It was error against the defendants and in favor of the plaintiff.

In Harding v. H. F. Johnson, Inc., 126 Mont. 70, 82, 244 Pac. (2d) 111, 117, it is said: "Defendant may not complain of an instruction more favorable to it than the facts and law warranted." Citing Gonzalez v. Nichols, 110 Cal. App. 738, 294 Pac. 758; Gerdes v. Pacific Gas & Elec. Co., 219 Cal. 459, 27 Pac. (2d) 365, 90 A.L.R. 1071; and Edwards v. Gullick, 213 Cal. 86, 1 Pac. (2d) 11.

The claimed error was invited by the appellant because its counsel offered the instruction; this apparent conflict was of its own doing of which it now seeks to take advantage.

Appellant's only other assignments of error that do not deal with the *res ipsa loquitur* doctrine concern the purported negligent construction of a county bridge as an intervening independent cause. The trial court covers this question in its instruction 20 (offered by appellant). Court's instruction 20 is as follows: "You are instructed that proximate cause is that which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred." The trial court's instruction 22 was offered by appellant. It reads: "You are

instructed that in determining the proximate cause of an injury or accident we must always look to the succession of events existing in every transaction more or less depending each upon the preceding event, and it is the duty of the jury to look to such succession of events and ascertain whether they are naturally and probably connected with each other by a continuous sequence or are dissevered by new and independent agencies and this must be determined in view of the circumstances existing at the time. If this sequence of events leading up to the injuries complained of is dissevered or unbroken by an intervening independent cause then there can be no recovery in this case."

Having considered then, the other specifications of error, we find no reversible error in refusing the instruction so offered by appellant.

Judgment is affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES ANDERSON, DAVIS, and BOTTOMLY, concur.