RICHLAND COUNTY, a body politic, Plaintiff and Respond-
ent, v. S. A. ANDERSON and FLORENCE V. ANDERSON,
Defendants and Appellants.

No. 9252.

Submitted February 23, 1955. Decided December 12, 1955.

291 Pac. (2d) 267.

Leavitt and Lucas, Miles City, for appellants.

J. C. Cottingham, Sp. County Atty., Sidney, Roland V. Colgrove, Miles City, for respondent.

Mr. W. B. Leavitt, Mr. Cottingham and Mr. Colgrove argued orally.

MR. JUSTICE DAVIS:

This is an appeal by S. A. Anderson and Florence V. Anderson, the defendants below, from an adverse judgment in favor of the plaintiff and respondent Richland County entered upon the verdict of a jury which awarded damages amounting to $27,-473.33. Twenty-eight errors are specified and argued by counsel for these appellants as grounds for the reversal of this judgment. Hereafter we shall refer to the parties as they appeared in the district court.

The errors specified present for our consideration three general questions:

(1) Whether the complaint states facts sufficient to constitute a cause of action against either defendant;

(2) Whether the evidence is sufficient to support the verdict and judgment against (a) Florence V. Anderson, and (b) S. A. Anderson, her husband;

(3) Whether the trial court was in error (a) in giving over the objection of the defendants, and (b) in refusing upon the offer of the defendants, certain instructions to the jury upon the law of the case.

The facts disclosed by this record are substantially the same as those in the companion case of Farmers Union Oil Company v. Anderson, No. 9461, 129 Mont. 580, 291 Pac. (2d) 604. They will not be restated here; but as other matters pertinent to this appeal become relevant note will be made of them in the course of the opinion which follows.

(1) The complaint is sufficient. The specifications of error to the contrary are without merit. Initially it appears that the defendants each challenged this complaint by demurrer, one of the grounds of which was that a cause of action was not stated. These demurrers were however both withdrawn without a ruling by the lower court. Thereafter the case went to trial without objection by either defendant to the introduction

of evidence under this complaint and without objection likewise that any evidence offered was inadmissible under its allegations.

The first ruling below upon the sufficiency of this pleading ▮ was made when the defendant, Florence V. Anderson, moved for a nonsuit. Her motion was denied; but this denial came too late to present the question whether the complaint stated a cause of action; i.e., if when this motion was made, the evidence itself made out a cause of action against her. For, if so, the complaint must be deemed amended to conform to the proof; and against her husband also, who challenged its sufficiency not at all. State ex. rel. Olsen v. Sundling, 128 Mont. 596, 281 Pac. (2d) 499; Bennett v. Dodgson, 129 Mont. 228, 284 Pac. (2d) 990; Donich v. Johnson, 77 Mont. 229, 258, 259, 250 Pac. 963; Bray v. Cove Irrigation District, 86 Mont. 562, 566, 567, 284 Pac. 539. In short if the plaintiff's proof makes a case, the complaint, which is amended thereby, will be taken to state that case for the purposes of this appeal against both defendants.

(2) We turn then next to the evidence to determine whether the plaintiff did in truth make out a case for the jury. As against Mrs. Anderson we think it did, and that her specifications of error to the contrary are not to be sustained.

The record is not clear precisely when Mrs. Anderson took possession of the upper Anderson dam and reservoir, which broke on March 26, 1951, and which is the foundation of the plaintiff's claim for damages. It does appear moreover in this connection that at the time of this break a tenant, one Clifford Jensen, was farming the Anderson ranch upon a crop share basis under a verbal lease from Mrs. Anderson.

There is however no dispute on this record or between the parties and their counsel that when the upper dam broke Mrs. Anderson was herself in the actual possession and control of both that dam and the reservoir behind it, and was responsible for the repair and maintenance of these structures. The tenant Jensen had neither possession nor control. For their re-

pair and maintenance he was charged with no responsibility. Such was the theory upon which the case was tried in the district court, concurred in by the plaintiff, the defendants and the counsel for both. Such then is the case which we shall review.

Thus viewed we think the evidence is sufficient to sustain findings by the jury:

(a) That the upper dam with its spillway as it was enlarged in 1947 and 1948 by August Vaux, Mrs. Anderson's father from whom she took title in July 1949, was not reasonably safe for the storage of the water impounded thereby in the reservoir behind it, and accordingly involved an unreasonable risk of harm to persons and property below on Lone Tree Creek;

(b) That when Florence V. Anderson took possession of this dam and reservoir sometime after July 1949 and before March 26, 1951, she would have known of the dangerous condition thus created by these structures and of the risk of a break involving injury to others, including the plaintiff county, if she had had a reasonable inspection made for her by a person skilled in such matters;

(c) That because she did not have such an inspection made, and accordingly did not acquaint herself with the danger inherent in this dam and reservoir, she was guilty of negligence, specifically in using these structures after she came into possession and control; or, what is the same thing, that in the exercise of ordinary care she would have known that the upper dam and its spillway were negligently constructed as the evidence tends to prove and accordingly would not have used this dam and reservoir until they had been made secure; and

(d) That her negligence here was a proximate cause of the break and flood of March 26, 1951, which damaged the plaintiff's property.

On the other hand we think the evidence is not sufficient to sustain a finding that Mrs. Anderson was negligent in any other particular, and that the case as tried below was in fact put to

the jury upon the theory of her liability as we have outlined above the controlling issues of fact, which we find in the record.

We have in Montana no case precisely in point. But authority elsewhere directly sustains the conclusion which we reach upon the sufficiency of the case against Mrs. Anderson. Restatement, Torts (Negligence), section 364, pages 987-991; section 366, pages 993-995; Frederick v. Hale, 42 Mont. 153, 112 Pac. 70; Walsh v. East Butte Copper Mining Co., 66 Mont. 592, 214 Pac. 641; Dover v. George Power Co., 46 Ga. App. 630, 168 S.E. 117; Carlson v. A. & P. Corrugated Box Corp., 364 Pa. 216, 72 A. (2d) 290.

Of course the impounding of water for the irrigation of the Anderson ranch was a public use. Constitution of Montana, Art. III, section 15; Donich v. Johnson, supra. Certainly neither the original construction and subsequent enlargement of the upper dam here in issue nor the use of that dam and the reservoir behind it, particularly by Mrs. Anderson, was a nuisance, but to the contrary a lawful undertaking. Jeffers v. Montana Power Co., 68 Mont. 114, 217 Pac. 652. Mrs. Anderson was not an insurer against all damage which under any circumstances might be occasioned by this reservoir and dam. Jeffers v. Montana Power Co., supra; King v. Miles City Irrigating Ditch Co., 16 Mont. 463, 41 Pac. 431, 50 Am. St. Rep. 506; Fleming v. Lockwood, 36 Mont. 384, 92 Pac. 962, 14 L.R.A., N.S., 628, 122 Am. St. Rep. 375; Bray v. Cove Irrigation District, 86 Mont. 562, 284 Pac. 539.

She was however obligated in her use and maintenance of these structures after she came into possession and control to exercise reasonable care for the safety of the persons and property of others. Compare Fleming v. Lockwood, supra; Watts v. Billings Bench Water Association, 78 Mont. 199, 215, 218, 253 Pac. 260; Bray v. Cove Irrigation District, supra; Newman v. Bitter Root Irrigation District, 95 Mont. 521, 529, 530, 28 Pac. (2d) 195; Billings Realty Co. v. Big Ditch Co., 43 Mont. 251, 257, 261, 115 Pac. 828. Measured by this rule there is

substantial evidence, as we have already said, upon which the jury may find Florence V. Anderson guilty of negligence. Here we do not intimate that the jury must make such a finding, and no other. The evidence upon the issue of negligence *vel non* is sharply conflicting. That evidence considered as a whole will clearly support a finding consistent with Mrs. Anderson's contention that she exercised due care. Compare United States v. Ure, 9 Cir., 225 F. (2d) 709. In short this issue if resolved by the jury for either party finds solid support in the record, which precludes this court from disturbing the verdict for want of evidence to sustain it. Burns v. Eminger, 81 Mont. 79, 261 Pac. 613; Pierce v. Safeway Stores, 93 Mont. 560, 20 Pac. (2d) 253; Wise v. Stagg, 94 Mont. 321, 22 Pac. (2d) 308; Cannon v. Lewis, 18 Mont. 402, 45 Pac. 572; Heckamon v. Northern Pac. Ry., 93 Mont. 363, 20 Pac. (2d) 258.

We conclude accordingly that we may not overturn the verdict and judgment against Mrs. Anderson upon the ground that no case is made out against her. Her motions for nonsuit and a directed verdict were properly denied.

As to the defendant, S. A. Anderson, the case is however otherwise. We shall assume, as the evidence tends to prove, that on occasion Mr. Anderson acted as agent for August Vaux, the owner of this reservoir and dam when these structures were built and enlarged, and also for the defendant, Florence V. Anderson, his wife, who took title from August Vaux in July 1949, and as owner was in possession and control at the time of the break on March 26, 1951, and for some time theretofore. We shall assume further that whatever Mr. Anderson did in connection with the upper dam, the reservoir there, and the Anderson ranch, while his wife was the owner, was done by her authority, on her behalf and in her interest.

Specifically we shall accept as true the testimony that Mr. Anderson had on occasion before March 26, 1951, acted for Mrs. Anderson in connection with this dam and reservoir, and her ranch, that he interviewed the commissioners of Richland County for August Vaux while Mr. Vaux owned these prem-

ises, and obtained for him permission to intersect the county road with the spillway which was then built from the upper dam, that at one time the witness Wier cleaned out this spillway under instructions from Mr. Anderson to do the work, that after the upper dam had been enlarged the plans for the work done and for the spillway there were turned over to Mr. Anderson, and that the tenant Jensen telephoned Mr. Anderson on the evening before the break to let him (Anderson) know that water was running out of the reservoir over the upper dam.

If all this evidence is however given its broadest possible effect, it falls short of satisfying the rule of Hagerty v. Montana Ore Pur. Co., 38 Mont. 69, 98 Pac. 643, 25 L.R.A., N.S., 356, and like decisions upon which counsel for the plaintiff stand. For in the Hagerty case the agent Wilson was the superintendent of the corporate principal and its *alter ego* in Montana, in possession and in control for it of its mine where the plaintiff Hagerty was injured. That is, Wilson was the corporation in Montana, who on the ground was in the actual possession of the premises with full authority to manage, control and repair and with the means immediately at hand particularly to make repairs. In these circumstances consonant with settled principles of the law of negligence liability attached to Wilson individually not because he was the agent of the owner, but because while occupying and controlling the premises where Hagerty was asked to work he (Wilson) failed to exercise reasonable care for Hagerty's safety. Compare Restatement, Torts (Negligence), section 343, pages 938-944.

That here is the nub of the opinion in the Hagerty case is made plain by the authorities cited for the conclusion which this court there reached. Particularly the reference to Mechem on Agency (1st Ed.), section 572, page 403, is most significant. For the quotation from this treatise to which this court gave its approval, and which applied by this court held the agent Wilson responsible for Hagerty's injury has been restated by this same author in a subsequent edition, 1 Mechem on Agency (2d Ed.), section 1474, page 1093, in words which are equally de-

cisive of the case made against the agent here, S. A. Anderson; i.e., that he is not liable on the facts of this record.

We quote this text in point: "On analogy to cases already considered, the agent should be held responsible for injuries caused by the condition of premises in the possession or under the control of the agent where the condition is one for which he is responsible and the injury is such as he would be liable for if he were controlling the premises on his own account. Thus, if an agent, having control of premises, should permit or maintain a nuisance thereon for which he would be liable if he were the principal in the transaction, he should be equally liable notwithstanding the fact that he is but an agent.

"For similar reasons, the agent should be held responsible for injuries caused by his neglect to keep in repair premises under his control where he is charged by his principal with the duty to repair and has the necessary means, in any case in which he would be liable for the same injury if he were controlling the premises on his own account. In these cases in which the agent has both the duty (to his principal) and the power to repair, and fails to do so, the injury can fairly be regarded as the consequence of his own act. * * *"

More directly applied to the agent's case presently before us on this appeal the text of this authority continues at page 1096, section 1475, to this effect: "It is, of course, essential to the liability of the agent in these cases, that he shall be responsible for the condition. If the premises were in the defective condition when they came under his charge, and he has neither the power nor the authority to change them, or if the defect arose while they were in his charge, but he had no power or authority to correct it, he could ordinarily not be held responsible. Thus, where an agent who was carrying on a mill was charged with responsibility for injuries caused by maintaining the dam at too high a level, but it appeared that the dam was erected at that height long before he became agent and he had no power or authority to change it, it was held that he was not liable."

568

In Brown Paper Co. v. Dean, 123 Mass. 267, the decision referred to here by Professor Mechem, the damage of which the plaintiff complained was caused by backwater from a dam which as it was alleged had been built too high. The defendant was the agent Dean in charge of the dam and the adjacent premises for his principals, who had taken title from a previous owner by whom this dam, a permanent structure, had been erected. On these premises the agent conducted a tannery. Like the defendant, S. A. Anderson, as far as this record goes the defendant Dean had neither ownership, possession, nor such control as would authorize him to alter or meddle with the offending dam. Accordingly the Massachusetts court held that the plaintiff's injury was caused by no act of the defendant agent, "authorized or unauthorized, connected with either the erection or maintenance of the alleged obstruction." We think the reasoning and the rule of this authority control the case of the agent Anderson here before us.

Nowhere does the evidence show that he was in possession or in control of the upper Anderson dam or the reservoir there. Certainly by anything that appears here he was not charged with the maintenance or the repair of either; nor was he furnished by his wife, the principal, with the means either to maintain or repair. In short the evidence in this case does not indicate that S. A. Anderson was ever authorized to do anything other than from time to time to execute for his wife, or his father-in-law, the specific missions upon which he was sent by the one or the other.

To the contrary the record is all one way that the possession and the control of this dam and reservoir was on March 26, 1951, and immediately theretofore with Mrs. Anderson, and with her alone. Her own witness Jensen, her tenant or sharecropper at the time upon the Anderson ranch, testified specifically and without contradiction to this effect. Mrs. Anderson's testimony in her own behalf permits of one conclusion only, viz., that it was she who was in control of this dam and reservoir, who directed its use, who possessed the premises upon which these

structures were built, and who was alone responsible for maintaining them in repair. There is no substantial evidence otherwise. Specifically there is no substantial evidence to sustain a finding that the possession or control on March 26, 1951, of either the upper dam or reservoir was with S. A. Anderson, the husband.

These facts accord not at all with those of the Hagerty decision in this court where the agent was held to liability. Nor do these facts satisfy at any point the rule of law for which the Hagerty opinion stands. What we have already said makes the distinction without more.

To the same effect that here a case against the agent Anderson is not made out see Restatement, Agency, section 355, pages 779, 780, 781; Restatement, Torts (Negligence), section 387, pages 1035, 1036; Hill v. Caverly, 7 N.H. 215, 26 Am. Dec. 735; Ulmen v. Schweiger, 92 Mont. 331, 355, 356, 12 Pac. (2d) 856; Caldarola v. Moore-McCormack Lines, Inc., 295 N. Y. 463, 68 N.E. (2d) 444, affirmed in Caldarola v. Eckert, 332 U.S. 155, 67 S. Ct. 1569, 91 L. Ed., 1968; Cullings v. Goetz, 256 N.Y. 287, 176 N.E. 397, 398, where Cardozo, Chief Judge, wrote that "liability in tort is an incident to occupation or control"; Mollino v. Ogden & Clarkson Corp., 243 N.Y. 450, 455, 456, 154 N.E. 307, 49 A.L.R. 518, citing Mechem on Agency (2d Ed.), Vol. 1, section 1474; Kaumans v. White Star Gas & Oil Co., 92 Utah 24, 39, 40, 63 Pac. (2d) 231 (holding agent in control liable); Goodman v. Fernald, 154 Or. 654, 658, 660-661, 61 Pac. (2d) 1253; 2 Am. Jur., Agency, section 334, pages 263-264; 56 Am. Jur., Waters, section 173, pages 639, 640; 35 Am. Jur., Master and Servant, sections 586, 587, pages 1023-1025; 3 C.J.S., Agency, section 221 (a) page 131; 57 C.J.S., Master and Servant, section 577, pages 345-348; 39 C.J., Master and Servant, section 1512, pages 1311, 1312.

The judgment against the defendant, S. A. Anderson, must be reversed and remanded for dismissal as to him. His motions for nonsuit and dismissal (directed verdict) were good.

(3) There remain for consideration the errors specified by

the defendant, Florence V. Anderson, in the instructions given and refused. Instruction No. 35 offered by the plaintiffs and given by the court is as follows: "You are instructed that the Plaintiff is entitled to recover in this action, if you find by a preponderance of the evidence that the upper Anderson dam and reservoir was not originally enlarged in such a manner as ordinary care and prudence and skill required, having regard to the particular locality, the drainage area above said dam, its liability to frequent and extraordinary runoffs which could be anticipated, or if after its enlargement it was not kept and maintained in such a condition and repair as ordinary and reasonable prudence and care called for."

To this instruction there was objection upon various grounds, one of which was in substance that Mrs. Anderson was not liable for negligence in the construction of the upper dam by Mr. Vaux, unless she knew, or in the exercise of ordinary care should have known, when she acquired title that it had been defectively constructed. This objection should have been sustained; for it clearly pointed out the particular in which the instruction incorrectly states the law within the rule of the authorities cited heretofore in this opinion.

Indeed, although elsewhere the court told the jurors that the owner of a dam was not liable as an insurer against injuries sustained because of a break, this instruction effectively made Mrs. Anderson nothing less than an insurer against any negligence of her father in enlarging the upper dam as he did in 1947 and 1948, which it is conceded was before Mrs. Anderson took possession or control. Under this instruction for his negligence she is to be held to liability without fault on her part. As applied to the admitted facts we see no escape from this conclusion.

Moreover this error was not cured by any other instruction given. Particularly instruction 33 given over objection did not remedy the defect manifest in instruction 35, primarily because instruction 33 also should not have been given at all. It clearly assumes the existence of a dangerous condi-

tion upon the premises to which it refers as the objection of counsel points out. Accordingly as applied to the facts of this case, a disputed issue, which is of the very essence of the plaintiff's claim for damages, was withdrawn from the jury. The objection interposed was good, and should have been sustained.

If however instruction 33 were correct as given, instruction ██ ██ 35 was not aided thereby. In reaching this conclusion we have not overlooked the familiar rule that the instructions given the jury are to be read as a whole; a rule which the trial judge properly incorporated in his charge. Compare Rohan v. Sherman & Reed, 61 Mont. 519, 202 Pac. 749; Adams v. Durfee, 67 Mont. 315, 322, 215 Pac. 664; Rose v. Intermountain Transportation Co., 127 Mont. 493, 267 Pac. (2d) 122. We recognize the ultimate test to be " ' "how and in what sense, under the evidence before them, and the circumstances of the trial, would ordinary men and jurors understand the instructions as a whole." ' " Rose v. Intermountain Transportation Co., supra, 127 Mont. at page 498, 267 Pac. (2d) at page 125.

But when we apply this test to the evidence here and all the instructions which the trial court gave on the predicate of that evidence we find nothing which would give a juror any different or broader understanding of instruction 35 than that apparent on its face upon a first reading. For there the jurors were told precisely what facts standing alone and without more entitled the plaintiff to "recover in this action"; i.e., if they found (1) that the upper Anderson dam and reservoir were not originally enlarged as ordinary care required, or (2) that after enlargement these structures were not maintained in such repair as ordinary care demanded. Liability follows, if either the one or the other of the stipulated conditions is satisfied, and without reference to the settled principle of the law of negligence that Mrs. Anderson must herself be at fault in some particular to charge her with liability.

To the contrary of this rule by express language Mrs. Anderson must respond in damages under this instruction for any

want of ordinary care by her father in enlarging or maintaining the upper dam, even though her father was then the owner in possession and control, and even though when thereafter she came into possession and control she neither knew nor in the exercise of ordinary care should have known that because of negligence on his part there was danger of a break and resulting harm to others.

No juror could obey instruction 35 as written, and at the same time heed in any part instruction 33, which at best is in direct conflict with it. Both instruction 33 and instruction 35 are open to objection for other reasons than those stated by counsel; but the grounds put in the objections made were enough. These instructions should have been refused. For this error Mrs. Anderson's motion for a new trial should have been granted. Accordingly here there must be a reversal and remand that she may have the new trial to which she is enttiled.

Consistent with R.C.M. 1947, section 93-216, we are now called upon to determine the other questions of law involved in this case and presented upon this appeal, which are necessary to a final determination of the litigation. Court's instruction No. 25 offered by the plaintiff and given over objection to the effect that due care is not always shown when the usual custom is followed in ''constructing, maintaining and operating a dam'' was not open to the objection made, which accordingly was properly overruled by the trial judge. As applied to the evidence in this case, however, this instruction amounts to a comment upon the weight of specific evidence before the jury. It should not therefore be given when the cause is tried again.

What the effect may be of the testimony which is said to reflect a custom in building dams of a kind with that here we think lies exclusively with the jury. In their deliberations they should not be hampered by any statement given as the law of the case that custom may or may not be sufficient to make out due care or the converse, which is negligence.

Instruction 23, which is in the precise language of R.C.M.

1947, section 89-701, should not be given upon the re-trial ordered. This statute has no application to the facts here under the theory of common-law negligence upon which the plaintiff has sued and tried its case. Compare Frederick v. Hale, supra, 42 Mont. at page 168, 112 Pac. 70.

Specifically, as an abstract statement of law this instruction directly conflicts with the other instructions given by the court to the effect that Mrs. Anderson could be held to liability for the plaintiff's loss only upon proof of negligence on her part in some particular which proximately caused that loss, and im-pliedly conflicts with the court's other instruction that Mrs. Anderson is not liable as an insurer.

Finally, if the substance of this statute were applicable to this case, it should not have been given in the abstract without note of the factual issues which the evidence raises. In other cases we have criticized such an instruction, particularly where, as here, the facts and the issues presented by them are not easy of solution. Newer v. First National Bank of Harlem, 74 Mont. 549, 557, 558, 241 Pac. 613; Hunt v. Van, 61 Mont. 395, 399, 202 Pac. 573.

The objection made at the trial to this instruction should have been sustained. For the further reasons which we have given also this paragraph should have no place in the court's charge to the jury when the case is tried again.

By instruction 31 the court assumed to tell the jury that either the plaintiff county under its complaint, or Mrs. Anderson under her cross-complaint could recover upon proof of any one or more of the acts of negligence alleged which proximately caused the damage sustained, that it was not nec-essary for either party to prove all the negligent acts set out in its or her pleading. The point of the objection made to this instruction was that concurrent negligence is charged by the plaintiff such that no one negligent act specified "is alleged to have caused" the damage done. We think this objection and the specification of error thereon without merit. As amended by the proof made at the trial the complaint is not subject to

the construction counsel puts upon it. See Watts v. Billings Bench Water Ass'n., supra, 78 Mont. 212-215, 253 Pac. 260. The reasoning of that authority and the rule stated there control here. But as drawn this instruction is contradictory and unintelligible. It should not therefore be given upon a new trial in the language found in this record.

By instruction 38 the jury were told what damages, if any, ▮▮▮ the plaintiff was entitled to recover. Here the court specifically advised the jury that proof of the damages alleged must be made by a preponderance of the evidence to warrant a recovery. The jury were given also the measure of the damages claimed which they were to apply. If this instruction is open to challenge upon any ground the point was not covered by the objection interposed. The trial court was not in error in overruling that objection.

The court properly refused to give the defendants' offered instruction 2. The plaintiff is not required to prove the allegations of its complaint, and as well something else in addition thereto, i.e., to entitle it to a verdict. This offer is also incomplete, because Mrs. Anderson's liability for negligence in her use of this dam and reservoir is there too narrowly stated. Our summary above of the grounds upon which she may be held responsible for the plaintiff's loss indicates as much.

For a like reason the trial court was not in error in refusing ▮▮▮ to give defendants' offered instruction 9. Elsewhere in his charge the trial judge told the jury that the owner of a dam and reservoir used for irrigation purposes is not an insurer. To this extent the requested charge is repetitious. In addition again the care required there of Mrs. Anderson does not accord, under the language of this offer, with our view of her responsibility.

Nor was the defendants' offered instruction 11 a correct statement of the law. It was properly refused. That August Vaux may have employed skilled engineers and contractors in building and enlarging his dams and reservoirs, that these structures may have been built consistent with the plans, speci-

fications and usage of ordinarily prudent, careful and experienced persons so as to impound and reasonably handle the waters of Lone Tree Creek in any ordinary season are matters which are not decisive here, if in fact there was negligence in the enlarging of the upper dam and reservoir in 1947 and 1948, and if when Mrs. Anderson took possession and assumed control she should have learned of the danger there. August Vaux is no party to this action. If he is liable at all to the plaintiff for the break of March 26, 1951, it is for different reasons and perhaps upon broader grounds than those which spell out Mrs. Anderson's responsibility. Yet what he did cannot relieve Mrs. Anderson, if the upper dam was in fact negligently enlarged, and if Mrs. Anderson when she came into possession and control should accordingly have known of the danger inherent in that structure.

The defendants' offered instructions 23a and 25 which assumed to define the duty of the plaintiff to build its bridge over the spillway from the upper dam in a careful and prudent manner were incorrect in their statement of the applicable law, and under the facts of this case were properly refused. However, we agree with the trial court that on this record Mrs. Anderson has made a case for the jury under her cross-complaint.

Upon a new trial therefore she will be entitled (1) to an instruction which limits her liability for the damage done the plaintiff's property as we have outlined in this opinion the only grounds upon which she can be held responsible for that loss on the evidence before us; and also (2) to a further instruction defining her right to recover under her cross-complaint for her loss, (a) if the county was guilty of negligence in building its bridge across the spillway at the upper dam which was a proximate cause of the break, and (b) if Mrs. Anderson herself was not guilty of negligence proximately contributing to that break.

A further appropriate instruction defining contributory negligence as a defense in terms applicable to the plaintiff county as well as to the defendant, Florence V. Anderson, should also

be given to supplement the instructions covering the liability of each party respectively to the other for negligence as the jury may find consistent with their view of the evidence.

The defendant's offered instructions 4 and 36 were designed to state the grounds of Mrs. Anderson's liability for any negligence of her father, who as the previous owner had enlarged the upper dam and built the spillway in 1947 and 1948. Neither instruction was technically correct. Both were properly refused. Upon a new trial consistent with the view which we take here of Mrs. Anderson's duty owed the plaintiff county in connection with this dam and reservoir there will be no necessity for any instruction covering the point of these offers, i.e., if the jury is elsewhere told the grounds upon which Mrs. Anderson may be held to liability, if at all, as we have defined her responsibility above.

Other questions discussed in the briefs of counsel or suggested by this record should not present themselves again upon the new trial to be had.

The judgment of the district court and its order denying a new trial are reversed with directions to dismiss as to the defendant, S. A. Anderson, and to proceed with a new trial of the issues made against Mrs. Anderson as may be consistent herewith.

MR. JUSTICES ANDERSON and BOTTOMLY, concur.

HON. W. W. LESSLEY, District Judge, sitting in place of Mr. Justice Angstman.

MR. CHIEF JUSTICE ADAIR: (concurring in part and dissenting in part).

I concur in that portion of the majority opinion wherein the judgment against the defendant S. A. Anderson is reversed and dismissal as to him ordered, but I dissent as to all that portion of the majority opinion which reverses the district court's judgment made and entered on the jury's verdict against the defendant Florence V. Anderson and which reverses the trial

·court's order denying her a new trial. As to her I find no re-
versible error in the record presented on this appeal and there-
fore I would affirm both the judgment and order entered as
to her.

W. W. LESSLEY, District Judge.

I regret, sincerely, that I am unable to agree with the ma-
jority in its reversal of the judgment of the lower court in
denying the defendant Mrs. Florence V. Anderson a new trial.

It is my duty to disagree but this dissent will be brief. The
crux of the majority opinion is the alleged error of the lower
court in giving instruction No. 35, over the defendant's ob-
jection, and we shall confine our statement to that point. This
instruction is treated as fatal; it is the view of the majority of
this court that the evil thereof is not checked, or changed, or
modified, or supplemented, or redeemed, by other instructions
given. They state, flatly that the effect of the alleged fatal
instruction is to make Mrs. Anderson an insurer, and further
an insurer against the negligence of her father, August Vaux.

We approach our analysis in this cause not as an exercise in
legal calisthenics but mindful of the trial judge's task in a fast-
moving case. The lower court, unlike the majority, does not
have the sustaining and soothing benefit of conferences and
counsel with his brethren, or the opportunity for research
and study. I say this not to excuse an error committed by the
lower court in instructing the jury as to the law, because in my
humble opinion there was no error, but it needs to be stated
and stated by an appellate court to put in proper perspective
instructions of law in our jurisdiction.

Let us first return to the facts taken from the companion
case that we may properly place the defendant Mrs. Florence
V. Anderson in the fact structure.

"The history of the ownership of the land on which dams were
constructed and which is pertinent to our decision is as fol-
lows: August Vaux acquired the land in 1912; he personally
occupied and farmed it until the spring of 1948; he then leased

it to one Clifford Jensen for a two year term, ending January 1, 1950. *Until his illness in April 1949* Vaux personally handled and operated his business, and had provided in the Jensen lease that he retain control of the lands so leased. On June 25, 1945, Vaux executed a deed (he had written in longhand) of the lands to his daughter Florence V. Anderson; he kept this deed until July 1949, when he instructed Florence to take the deed and place it on record. This she did. *From and after July 1949, Florence V. Anderson maintained and operated the dams and managed the ranch lands* on which they were located. *She knew of the enlargement of the upper dam, construction of the spillway, she was out at the dams at various times, she was interested, and if any redressing was needed* in her opinion, *she ordered it done* to the dams.'' Farmers Union Oil Co. v. Anderson, No. 9461, 129 Mont. 580, 291 Pac. (2d) 604. (Emphasis supplied.)

These facts must be read with the admitted statement that the upper dam broke at about 2:15 a.m. on *March 26, 1951.*

Now let us consider the pertinent instructions of the court. The court in instruction No. 33 told the jury: ''You are instructed that the negligence of a person in permitting a dangerous condition to remain on his premises is *not sufficient* to charge him with liability for an injury resulting therefrom after he has parted with the ownership and control of such premises. Responsibility then rests upon the purchases or other person who is substituted with respect to the control over the property, *if such person, either knew or by exercise of ordinary care should have known of such a condition.''* (Emphasis supplied.)

If you read instruction No. 33 with instruction No. 35, as you must, you find the court emphasizing knowledge actual or implied as a predicate of Mrs. Anderson's liability in this cause, if any. To cast away instruction No. 33 from this auxiliary accomplishment because of the single unfortunate phrase, ''dangerous condition,'' is to refuse a judicial margin for tolerance. If ''dangerous condition'' is anathema here, surely the court's instruction No. 20, which reads in part as

follows, "You are instructed *as a matter of law that a person may lawfully collect and impound waters by means of a dam* and is not liable in such case for injuries or damages caused by the breaking of the dam or the escape of the waters therefrom in the absence of negligence on his part" (emphasis supplied) removed the curse from that phrase.

But the lower court did not stop there; it bluntly, categorically and succinctly instructed the jury in instruction No. 19 as follows: "You are instructed that the owner of a dam and reservoir used for irrigation purposes is not liable *as an insurer* for injuries sustained upon the breaking or escaping of water therefrom." (Emphasis supplied.)

The lower court correctly discharged its onerous duty in instructing the jury as to the law. The record is eloquent on that point. The majority opinion does not rely on the settled rule of this jurisdiction that the instructions given to the jury *are to be read as a whole,* though it mentions the rule on its way to a reversal. Further, by the ultimate test as cited by the majority, " ' "how and in what sense, under the evidence before them, and the circumstances of the trial, would ordinary men and jurors understand the instructions as a whole" ' ", Rose v. Intermountain Transportation Co., 127 Mont. 493, 267 Pac. (2d) 122, 125, the lower court fully and properly instructed the jury. There was no error below in regard to Mrs. Anderson.

I concur with the majority opinion in its direction to the lower court to dismiss as to the defendant S. A. Anderson on the grounds stated.